## EDWARD A. TAFT *vs.* DAVID A. WARD & others.

Statutes of another state, authorizing joint stock companies of seven or more members to be formed with such officers as are usual in corporations, and the interests of the members in the capital to be transferred like shares in the stock of a corporation; and provid· ing that they may be sued under the name of the president or treasurer, and judgment rendered against them in the name of the company, and until execution on such a judg-·ment is returned unsatisfied no suit shall be maintained on the demand against the individual members; are local in their operation, as regards legal remedies for debt against the company; and the members may be sued here for such a debt as partners.

CONTRACT by an inhabitant of Boston against David A. Ward of Concord in New Hampshire, and fifteen others, some of Massachusetts, and others respectively of Maine, New Hampshire and New York, " all of said parties transacting business under the firm name of the New England Express Company at Boston in the county of Suffolk," on an account annexed for work done by the plaintiff for said New England Express Company. Writ dated January 25, 1869. The action was discontinued as to several of the defendants. Ward answered, denying all the plaintiff's allegations, and alleging that the plaintiff was himself a member of the New England Express Company, and the work which he did, if any, was done for himself jointly with the other members, and in part payment of his share in the capital of the company.

At the trial in the superior court, before *Putnam*, J., the plaintiff contended that the defendants were suable as partners ; and to prove the existence of the partne.ship he introduced written evidence of the association of a joint stock company, under the statutes of New York, by articles dated October 9, 1867 ; and that the defendant Ward afterwards became a member of the company by subscribing for a number of shares of the capital stock and paying an instalment thereon, and " acting as such member."

These articles were signed by eight persons, and recited, in a preamble, that the subscribers were desirous " of forming a joint stock association for the purpose of engaging in and conducting the business of carrying and transporting for hire merchandise, money, coin, bullion, jewels, securities, and property generally

and of collecting bills, notes, bonds, accounts, claims, and public and private securities," and did therefore "severally promise and agree to and with each other to engage in said business," and did " jointly associate ourselves together for the purpose of conducting said business upon the terms and conditions" in the articles contained.

The first article then provided that the association should be known as the " New England Express Company," continue in existence fifty years, and " not cease its existence, or be dissolved or determined by the death or resignation of any officer or stock holder, or by the failure to elect officers, or by the sale or transfer of stock by any stockholder, and all officers shall hold their offices until their successors shall be actually chosen as hereinafter specified, and shall have entered upon the duties of their offices."

The second article fixed the capital stock of the company at the sum of $2,500,000, divided into 25,000 shares of $100 each, subject to be increased by vote of three fourths of the executive committee, or by vote of three fourths of the board of trustees at any regular annual meeting.

The third article provided that the officers of the company should be, a president and vice-president, each to be a member of and chosen by and from the executive committee; a treasurer; a secretary; an executive committee, of not more than nine or less than three stockholders; and trustees.   It named the first officers of the company, to hold office until successors should be chosen by trustees appointed by the stockholders; and also named nine persons as trustees, to hold office till the first Wednesday of December 1869, " when their successors shall be appointed at a meeting of the stockholders to be held on that day, and thereafter the trustees shall be chosen annually on the first Wednesday of December of each year by the stockholders of the company, and all other officers shall be chosen by the trustees at their regular annual meeting;" and provided that the number of trustees might be increased by the executive committee to not more than fifty.

The fourth article was as follows: " The stockholders of the company shall not be liable to any person dealing with it, or for

its debts or liabilities, or upon any contracts made with or by it, to an amount exceeding the amount unpaid upon stock respectively held by them, and a further amount equal to the amount of stock so held by them respectively ; and it shall be the duty of the executive committee, and all other officers and agents of the company, to cause to be inserted in all contracts of every kind, made by the company with all persons with whom it shall deal, a stipulation providing against any greater liability on the part of the stockholders than as above mentioned."

The fifth article gave the executive committee power " to contract debts and liabilities against the company to an amount not exceeding the funds in the hands of and belonging to the company over and above all indebtedness ; " and provided that " no officer, agent, employee or stockholder of the company shall contract any debts or liabilities against the company, except upon the written authority of the executive committee limited as aforesaid."

The sixth article intrusted " the sole management of the business, stock, funds, property and concerns of the company to the executive committee, who shall appoint and remove at will all agents, servants, subordinates and employees whatsoever, necessary to the conduct of the business, and may make by-laws for the government of the company, its officers and agents, not inconsistent with law and these articles, and may call in and demand, from the stockholders and stock subscribers respectively, all such sums of money by them subscribed for stock, at such times and in such payments or instalments as said committee shall deem proper."

The seventh article provided that " the stock shall be issued in certificates signed by the president and secretary, and countersigned by the treasurer, and be transferable only upon the books of the company in person or by attorney, and upon the person to whom the stock is transferred assuming in writing all the obligations and liabilities of the person transferring the same, as a stockholder, and undertaking and agreeing to conform to these articles."

The eighth and ninth articles limited the selection of trustees and members of the executive committee from among holders of at least ten shares in the stock.

The tenth article provided that " the executive committee shall from time to time declare and pay to the stockholders such dividends as the profits of the business of the company shall warrant."

And the eleventh article provided for amendments of the articles by concurrent vote of two thirds of the executive committee and a majority of the trustees.

The plaintiff also introduced in evidence a " Prospectus of the New England Express Company," which he proved " was prepared and issued by the parties to the agreement at the time said agreement was executed." This prospectus set forth, that the company was formed as a result of a conference of many business men from all parts of New England ; that it was designed that the stock should be held by those who had goods to transport, thus saving to themselves the profits of transportation ; that New England afforded the best field in the country for such an enterprise, and it was designed to have the chief business centres represented in the board of trustees ; that the success of the enterprise was assured, for the business of the stockholders would make it self-sustaining ; that " the company is organized under the laws of the state of New York, as the laws of that state afford superior facilities for organizing such a company, the plan having been fully and successfully tested in the highest courts as to its legality ; " that five per cent. on the capital stock would be required to be paid for at the time of subscribing, and the remainder be paid up at convenient times as the business of the company should require ; that no individual would be permitted to subscribe for more than 100 shares of stock ; that the stockholders' meetings and general meetings of the trustees would be held in Boston or some other place in New England ; and that the office of the company would be located in Boston.

The plaintiff also offered in evidence a book of records, kept by Charles H. Stoddard as secretary of the company ; and Samuel W. Waldron, one of the original associates, testified " that the book was the one in which were kept the records of the partner-

ship, and of what the partners did at different meetings." It was recorded in the book, that, at a meeting held by the associates in New York, on October 15, 1867, it was voted that "we organize ourselves, and such others as shall join hereafter, into a joint stock association, to be known and designated as the New England Express Company, under the laws of New York, and we adopt and sign the articles of association, as submitted and read by the secretary and hereinafter subscribed."

The defendant Ward, "upon this evidence, contended that under the statutes of New York, and the reported decisions thereon, which were read and may be referred to, this suit would not lie against him until the plaintiff had first brought suit against the New England Express Company, and recovered judgment, and an execution against them on such judgment had been returned unsatisfied, which it was admitted had not been done in this case ; " and the judge withdrew the case from the jury and reported it, by consent of the parties, for the determination of the question by this court, before whom it was argued in March 1870.

*S. C. Darling*, for the plaintiff.

*G. W. Estabrook*, for the defendants, referred to the N. Y. Sts. of 1849, *c.* 258 ; 1851, *c.* 455 ; 1853, *c.* 153 ; 4 N. Y. Sts. at Large, 651, 652 ; printed in the margin ; * and cited *Tibbetts* v. *Blood,*

---

* The N. Y. St. of 1849, *c.* 258, as amended by the St. of 1853, *c.* 153, is as follows :

" § 1. Any joint stock company or association, consisting of seven or more shareholders or associates, may sue and be sued in the name of the president or treasurer, for the time being, of such joint stock company or association ; and all suits and proceedings so prosecuted by or against such joint stock company or association, and the service of all process or papers in such suits and proceedings on the president or treasurer, for the time being, of such joint stock company or association, shall have the same force and effect, as regards the joint rights, property and effects of such joint stock company or association, as if such suits and proceedings were prosecuted in the names of all the shareholders or associates, in the manner now provided by law.

" § 2. No suit so commenced shall abate by reason of the death, removal or resignation of such president or treasurer of such joint stock company or association, or the death or legal incapacity of any stockholder or associate during the pendency of such suit ; but the same may be continued by or against the successor of the officer in whose name such suit shall have been commenced.

21 Barb. 650 ; *Waterbury* v. *Merchants' Union Express Co.* 50 Barb. 157 ; *Robbins* v. *Wells*, 1 Robertson, 666 ; *Portsmouth Livery Co.* v. *Watson*, 10 Mass. 91 ; *Halsey* v. *McLean*, 12 Allen, 438 ; *Stebbins* v. *Leowolf*, 3 Cush. 137, 144 ; *Williams* v. *Wade*, 1 Met. 82 ; *Hutchins* v. *New England Coal Mining Co.* 4 Allen, 580 ; *Burke* v. *Miller*, 7 Cush. 547 ; *Allcott* v. *Strong*, 9 Cush. 323 ; *Dutton* v. *Woodman*, Ib. 255.

CHAPMAN, C. J. This case is incumbered by a mass of inartificial pleadings ; and it has been difficult to ascertain from them

"§ 3. The president or treasurer of such joint stock company or association shall not be liable in his own person or property, by reason of any suit prosecuted as above provided, by or against him, as the nominal plaintiff or defendant therein ; provided, that such president or treasurer shall not be exempted from any liability to which he may be otherwise legally subject as a stockholder or shareholder in such joint stock company or association.

"§ 4. Suits against any such joint stock company or association, in the first instance, shall be prosecuted in the manner provided in the first section of the said act; but after judgment shall be obtained against any such joint stock company or association, as above. provided, and execution thereon shall be returned unsatisfied, in whole or in part, suits may be brought against any or all of the shareholders or associates, individually, as now provided by law ; but no more than one suit shall be brought and maintained against said shareholders at any one time, nor until the same shall have been determined, and execution issued and returned unsatisfied in whole or in part. No death, removal or resignation of officers or shareholders, or sale or transfer of stock, shall work a dissolution of any such joint stock company or association, as against the parties suing or being sued by such company, as herein provided, or as against any creditor or person having any demand against such company at the time of any such death, removal, resignation, sale or transfer.

"§ 5. Nothing herein contained shall be construed to confer on the joint stock companies or associations, mentioned in the first section of this act, any of the rights or privileges of corporations, except as herein specially provided."

By the N. Y. St. of 1851, *c.* 455, it was enacted that the St. of 1849, *c.* 258, " is hereby extended to any company or association composed of not less than seven persons, who are owners of or have an interest in any property, right of action or demand, jointly or in common, or who may be liable to any action on account of such ownership or interest ; and the suits or proceedings authorized by the said act may be brought and maintained in the manner therein provided, as well for any cause of action heretofore existing as for any that may hereafter accrue."

what is the question intended to be presented to us. It is an action in favor of the plaintiff against David A. Ward and several other persons, living in this and other states, for services and expenses. The defendant Ward, among other motions and answers, makes one answer which denies the allegations in the plaintiff's writ, and alleges that, if the services were rendered, they were rendered to the New England Express Company, and if the defendant is liable he is merely liable as a member of that company.

The papers referred to in the record and report tend to show that certain persons, being more than seven in number, associated together in the state of New York to form the New England Express Company. It was not incorporated, and it consisted of persons living in New York, Massachusetts and other states, and some of its meetings were held in Boston. Its principal purpose seems to have been to do business as an express company in all the New England states.

The defendant objects, among other things, that, even if the plaintiff, an inhabitant of Boston, is a creditor of the association, he cannot maintain this action, but must proceed according to the provisions of the statutes of New York, which he cites.

These statutes provide, in substance, that any association, consisting of seven or more shareholders or associates, may sue and be sued in the name of the president or treasurer; that in such suit a judgment may be rendered against the company; and until an execution is issued against the company, and returned unsatisfied, no action shall be maintained against individuals. These statutes seem to apply to all copartnerships consisting of seven or more members. The members of such companies are authorized to hold their interests in shares, which are assignable like shares of stock in a corporation, and the action against the members is regarded as supplementary to the action against the company. *Waterbury* v. *Merchants' Union Express Co.* 50 Barb. 157. *Robbins* v. *Wells*, 1 Robertson, 666.

So far as these statutes relate to the procedure in courts for the recovery of debts, they are limited to the state of New York; for each state adopts its own forms of remedy. Story Confl. Laws

§§ 556–558. The plaintiff could not in this Commonwealth bring an action against the president or secretary, and obtain a judgment against the company by its name ; nor could he bring an action against the members, or any of them, as a supplement to such an action. In order to do so, we must hold that the statutes of New York prescribing forms of action are in force here. In this Commonwealth, such a company is a mere copartnership. *Tappan* v. *Bailey*, 4 Met. 529. *Tyrrell* v. *Washburn*, 6 Allen, 472. If this company were a corporation in New York, we should have no power to enforce the remedies provided by the statutes of that state in favor of creditors against its stockholders. *Halsey* v. *McLean*, 12 Allen, 438. *Erickson* v. *Nesmith*, 15 Gray, 221, and 4 Allen, 233. But it is not a corporation in that state. It is but a copartnership, and the peculiar powers conferred upon copartnerships there, when they are composed of seven or more members, are not of such a nature as to make its contracts anything else but contracts of the individual members.

*Case remitted, to stand for trial.*