BOSTON & ALBANY RAILROAD *vs.* JOHN H. PEARSON & others.

Suffolk. Nov. 13, 1879. — March 2, 1880. COLT, J., did not sit. SOULE, J., absent.

A joint-stock company formed under the N. Y. Sts. of 1849, c. 258, 1851, c. 455, and 1853, c. 153, is not a corporation, and members of it may be sued here as partners.

Under the laws of New York, certain persons met, and resolved that "we organize ourselves and such others as shall join hereafter into a joint-stock association, and that we adopt" certain articles of association. They then signed the articles of association and adopted a form of subscription, which stated the name of the association and the names of the officers, and that the capital stock was $2,500,000, and by which the signers purported to subscribe for the number of shares set opposite their names in the capital stock of the association, agreed to pay a certain percentage on every share within ten days, and to pay such further calls as might be made by the company in pursuance of its articles of association, whereupon the company was to issue its stock for the amount so subscribed, and authorized the secretary of the company to sign their names to the articles of association. The prospectus stated that the company "is organized with a capital stock of $2,500,000;" that "a relatively small cash capital, and a percentage only of the subscriptions, will be required to put the company in working order;" and that subsequent calls will be made as the business of the company requires. Subscriptions were obtained to the amount of $450,000. *Held*, that the subscription paper contained an absolute contract to take stock in an association already formed; that a person signing it, and paying the percentage required, became a partner in the enterprise, and was liable as such for a debt of the company, although he did not sign the articles of association, and never attended any meeting of the association, had no knowledge of the amount of the subscriptions or of the business of the association, and was not known to the creditor to be a partner when the debt was incurred: and although no certificates of stock were issued to any one. *Held, also,* that if it was necessary to prove that a subscriber's percentage had been paid to the association, in order to hold him as a partner, evidence that he paid it to the executive committee of the association was sufficient; and that the admission in evidence of an entry in the cash-book of the association, put in to show that the treasurer had received the money, was immaterial.

A formal defect in a declaration, which might have been cured by an amendment, is waived, if not objected to until after a trial upon the merits before an auditor.

CONTRACT upon an account annexed against the defendants, as "copartners under the firm and style of the New England Express Company," for work done by the plaintiff for said company in 1868. Writ dated April 1, 1872. Pearson alone defended, and filed an answer containing a general denial.

At the trial in the Superior Court, before *Colburn*, J., without a jury, the defendant contended that the New England Express

Company was a corporation organized in 1867, under the laws of the State of New York, and, as evidence of the laws of that state, put in the N. Y. Sts. of 1849, c. 258; 1851, c. 455; 1853, c. 153; * and the case of *Westcott* v. *Fargo*, 61 N. Y. 542. The plaintiff put in evidence, on this point, the N. Y. St. of 1854, c. 245.†

The defendant also contended that, if the New England Express Company was a partnership, and not a corporation, Pearson was not a member of it, and objected to evidence admitted to prove that he was a member; and also objected to the allowance of certain items of the account annexed.

The judge found for the plaintiff; and reported the case for the determination of this court. The facts appear in the opinion.

*E. Avery & H. G. Parker,* (*G. W. Estabrook* with them,) for the defendant.

*G. S. Hale & S. C. Darling,* for the plaintiff.

MORTON, J. The question whether the New England Express Company, organized under the laws of the State of New York, was a corporation or a copartnership, has been before the courts of this and other states in several cases; and it has been uniformly held that it was a copartnership, and not a corporation. *Taft* v. *Ward*, 106 Mass. 518, and 111 Mass. 518. *Bodwell* v. *Eastman*, 106 Mass. 525. *Frost* v. *Walker*, 60 Maine, 468. See also *Westcott* v. *Fargo*, 61 N. Y. 542; *Witherhead* v. *Allen*, 3 Keyes, 562. The provisions of the statutes of New York in relation to such copartnership, that suits shall be prosecuted in the first instance against the officers of that association, are

---

* The provisions of these statutes are stated in the margin of 106 Mass. 522, 523.

† Section 1 of this act provides that such associations may provide that the death of any stockholder or the assignment of his stock shall not work a dissolution of the association; and that such company shall not be dissolved except by a judgment of a court for fraud in its management, or other good cause shown, or in pursuance of its articles of association.

Section 2 gives the association power to provide by its articles that the shareholders may devolve upon any three or more of the partners the sole management of their business.

Section 3 is as follows: " This act shall in no court be construed to give said associations any rights and privileges as corporations."

provisions respecting the remedy; of local operation, not binding here; and the liability of the individual partners may be here enforced according to the laws of this Commonwealth. *Taft* v. *Ward*, 106 Mass. 518. *Gott* v. *Dinsmore*, 111 Mass. 45. It follows that the defendant Pearson is liable in this action, if he was a member of said copartnership at the time the plaintiff's bill was contracted.

Upon this point, the following evidence was introduced at the trial. In October 1867, a meeting of the persons whose names are subscribed to the articles of association was held in New York, at which it was "resolved, that we organize ourselves, and such others as shall join hereafter, into a joint-stock association, to be known and designated as the New England Express Company, under the laws of the State of New York, and that we adopt and sign the articles of association as submitted and read by the secretary and hereafter subscribed." The articles of association were signed at said meeting, and it was also resolved " that the subscription list to the capital stock of the said company be opened at once," and a form of subscription was adopted, which, after giving the name of the company, and the names of officers, stated the capital stock at $2,500,000, and proceeded as follows: " We hereby severally subscribe for the number of shares of the capital stock of the New England Express Company, set opposite our respective names, and agree to pay to the treasurer of the said company five per cent on every share of one hundred dollars so subscribed for, within ten days from the time of making such subscription; and to pay such further calls, at such time and in such amounts as may be made by the company, in pursuance of its articles of association; and thereupon, and in consideration thereof, the said company is to issue to us, severally, its stock for the amount so subscribed. And we hereby severally authorize and direct the secretary of said company to sign our names to the articles of association of said company." Copies of this subscription paper, together with a prospectus, were circulated, and subscriptions from a large number of persons, amounting to forty-five hundred shares of the par value of one hundred dollars each, were obtained. Among other persons, the defendant Pearson, in the fall of 1867, subscribed for fifteen shares, and, in the summer of 1868, he paid

the five per cent mentioned in said subscription paper. In the summer of 1868, the said company, through its executive committee, commenced and entered upon the express business, and, in the course of that business, made the contract with the plaintiff upon which this suit is brought.

Upon this evidence, it was competent for the presiding justice of the Superior Court to find that the defendant was a member of the copartnership, and as such liable in this action.

The paper signed by the defendant was an absolute subscription for fifteen shares of the capital stock of the New England Express Company. It contained no provision that it was not to take effect until the whole of the contemplated capital of two million five hundred thousand dollars was subscribed, or the performance of any other condition. It cannot be construed, as contended by the defendant, to be a mere promise to take stock in a company thereafterwards to be formed. The company was already formed and organized under the laws of New York. Upon examining the articles of association and prospectus, it is clear that it was not contemplated that the formation of the company, or its entry upon active business, was to be delayed until the whole of the capital was taken. The ninth clause of the prospectus declares that the company "is organized with a capital stock of two million five hundred thousand dollars, in order to meet the wants of its business as it extends, and as far as possible to distribute the capital among business men." In the tenth clause, it is said: "It will be seen that a relatively small cash capital, and consequently a percentage only of the subscriptions, will be required to put the company in working order. The receipts thereafter will maintain and extend it." So the eleventh clause says that "five per cent of the stock subscribed will be required at the time of subscription, and subsequent calls not exceeding five per cent at any one time will be made at convenient intervals, as the business of the company requires." The articles of association purport to be the present organization of a joint-stock association under the laws of New York; the subscription paper purports to be an unconditional subscription to stock in an association already existing; and the terms of the prospectus, issued in connection with the subscription papers, show that it was the understanding and purpose of

all parties, that the business of the company was to be entered upon before the whole capital was subscribed, and before all the assessments upon the stock subscribed were paid in.

There is no ground for the claim of the defendant that his subscription was conditional, or that it was a promise to take stock in a company to be organized in the future. By the law of partnership, one becomes a member of a firm when he contributes to the capital stock and is admitted to a community of interest with the other partners in the property, business and profits of the partnership. The defendant's subscription to stock and payment of the assessment of five per cent, upon the call of the company, admitted him into such community of interest; it entitled him to a share of the profits, if any were thereafter made; and it is immaterial that he did not formally sign the articles of association, either personally or by his agent authorized to do so by the terms of his subscription. *Tyrrell* v. *Washburn*, 6 Allen, 466. *Frost* v. *Walker*, 60 Maine, 468. Being a partner, he is responsible to the creditors of the firm; and it cannot be contended that the facts, if proved, that he never attended meetings of the association, and that he had no knowledge of the amount of the subscription for stock or of the business of the firm, would shield him from this responsibility. So the fact that the plaintiff did not know, when its debt accrued, that the defendant was a partner, is immaterial. It has a right to claim against all who were in fact partners at that time, whether known to it or not. So also the fact that the association never issued certificates of stock is immaterial. Such certificates were not to be issued until all the assessments were paid, and were not conditions precedent to the formation of the partnership. The relations of the partners to each other and to creditors would be the same whether they were issued or not. *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385.

At the trial, the defendant excepted to the admission in evidence of an entry upon the cash-book of the New England Express Company, introduced solely for the purpose of showing that the seventy-five dollars paid by the defendant was received by the treasurer of the company. It was established by other evidence, not objected to, that the defendant paid this amount to Eastman, one of the executive committee of the company.

If it was necessary to prove that the amount paid was received by the company, the evidence that it was paid in good faith to one of the executive committee, which had the management and control of all the affairs of the company, was sufficient to prove that fact. The further evidence to show that Eastman handed it to the treasurer was unnecessary. If, therefore, the entry upon the cash-book was erroneously admitted, it was immaterial, and did not prejudice the defendant.

The case at an early stage was referred to an auditor, who, after a full hearing of the parties, made his report to the court. At the trial in the Superior Court, the defendant for the first time objected to the allowance of items numbered 5, 6, 10 and 11 in the account annexed to the declaration, "upon the ground of the form in which they were charged." The fifth item is "to transportation of       cubic feet of extra freight between Worcester and Norwich, in October, $227.09." The others are like it. This mode of declaring is objectionable, and, if the defendant had moved in season, he would have been entitled to an amendment specifying the particulars of this general charge. But we are of opinion that the objection was taken too late. By going to a trial upon the merits before the auditor, without making any objection, he must be deemed to have waived objections merely of form, which, if made known, could have been cured without loss of time or expense by an amendment.

Upon the whole case, therefore, we are of opinion that the finding of the Superior Court was correct; and that the plaintiff is entitled to judgment thereon.

*Judgment for the plaintiff.*