PEOPLE *ex rel.* WINCHESTER *v.* COLEMAN *et al.*, Commissioners of Taxes, etc.

(*Supreme Court, Special Term, New York County.* March, 1889.)

TAXATION—JOINT STOCK COMPANIES.
    Joint stock companies formed solely by private agreement, and not under any statute, are not corporations within the meaning of that term as used in Rev. St. N. Y. pt. 1, tit. 4, c. 13, § 1, providing that all moneyed or stock corporations deriving an income or profit from their capital or otherwise shall be liable to taxation, etc.

*Certiorari* on relation of Locke W. Winchester, as treasurer of the Nation-al Express Company, to review the action of Michael Coleman and others, as commissioners of taxes, etc., of the city of New York in taxing the National Express Company upon its capital stock as a corporation.

*Hamilton Cole, W. W. MacFarland,* and *Clarence A. Seward,* for relator. *George S. Coleman* and *C. R. Waterbury,* for respondents.

BARRETT, J. The question here presented is whether the relator is liable to be taxed as a corporation within the provisions of the Revised Statutes con-cerning the assessment of taxes on incorporated companies. Rev. St. pt. 1, tit. 4, c. 13, § 1. This section reads as follows: "All moneyed or stock cor-porations deriving an income or profit from their capital or otherwise shall be liable to taxation on their capital in the manner hereinafter prescribed." The National Express Company is not an incorporated body. It is a joint stock association by private agreement. It was so formed in the year 1853. At that time the only statutory privilege conferred upon joint stock companies was that of suing in the name of their president or treasurer; the only privi-lege conferred upon their members was the deferring of individual liability until after the exhaustion of the remedy against the joint property. Laws 1849, c. 258; 1851, c. 455; 1853, c. 153. These statutes have always been treated as a system of procedure, and they were repealed by the repealing act of 1880, (chapter 245, §§ 26, 28, 30,) another system having meantime been adopted. Code Civil Proc. §§ 1919–1924. Since 1853 further and really sub-stantial privileges have been conferred upon joint stock companies, *e. g.:* Con-

tinued life, notwithstanding the death of a stockholder or the assignment of his stock, (Laws 1854, c. 245,) the sole management of the business by three or more of the shareholders, (same act,) and the right to take and convey real estate, for certain limited purposes, in the name of the president. Laws 1867, c. 289. The privileges conferred by these acts are undoubtedly corporate incidents, but they do not in terms create corporations, nor do the acts profess to authorize them. On the contrary, they expressly declare the opposite intent. It is true that this is not always the test of corporate existence, but it is at least conclusive of the absence of any legislative intent to confer corporate franchises. A corporation cannot be formed by a private agreement between individuals. The franchise must proceed from the state, and even the state cannot compel people to accept its bounty. Joint stock companies may be formed without regard to these statutes, and the promoters may choose to proceed solely upon their common-law rights and responsibilities.

There is, in fact, no statute of the state providing for the formation of joint stock companies or limiting their organization. Such companies may be said to be recognized by the acts which have been referred to, conferring privileges upon them. In that sense of recognition they are authorized and sanctioned by these acts. It is, however, the common-law right of private associations which is thus recognized; and as no limitation is imposed upon that right or form prescribed for its legal exercise, it is treated as coextensive with the general right to contract lawfully. When that right is exercised in a particular manner, certain privileges may be claimed and utilized under the statute. But the individuals so contracting may, if they see fit, ignore the statute, and proceed strictly under their contract and its common-law conditions. Any confusion upon this head, running through the books, proceeds mainly from the notion that every case must be brought within the definition either of a partnership, pure and simple, or of a corporation. Now, it does not follow that every joint adventure must be thus tested, or that the rights and remedies of the parties thereto, as between themselves, must be confined to the rules which usually govern in cases strictly within the particular definition. A joint stock association has always had a distinct place of its own in the law. I am speaking now of associations formed solely by private contract without special statutory authority. Joint stock corporations are quite another thing. So are joint stock associations brought into being by compliance with the formative regulations of a particular statute. Such an association, if endowed with full corporate faculties, is a corporation, whether so styled in the act or not; nay, even if the act declare the contrary. Having the essential attributes of a corporation, and having received those attributes from the state, it can be nothing else but a corporation. A perfect illustration of this principle may be found in the associations formed under the free banking act of this state, passed in 1838. Such associations were repeatedly held to be corporations and taxable as such, for the reason that they were organized under the formative regulations of the act, and thus derived their life from the state. Having all the attributes and faculties of corporations, and the associates having by their proceedings under the statute accepted from the state the franchise of banking, they were treated as corporations for the purposes of taxation; and, that, too, although the word "corporation" and the term "corporate franchise" were studiously omitted from the act. *Thomas* v. *Dakin,* 22 Wend. 9; *Bank* v. *Watertown,* 25 Wend. 686; *People* v. *Niagara Co.,* 4 Hill, 20, affirmed, 7 Hill, 504. The true test is whether the being is natural or artificial. It is artificial if created by statute, or called into being by compliance with statutory provisions. It is natural when solely the creature of private contract. The nature of the being is not affected by the character of the contract. Parties may, if they choose, embody in their articles of association certain corporate incidents of a lawful character. If they usurp corporate franchises, they can be checked by the law. But, as between them-

selves, the subscribers to lawful articles may be held to their contract. The law affecting them is contained in those articles. As to the creditors, however, partnership doctrines govern, and each individual member, in the absence of any statutory privilege, is directly liable for the company's debts.

The company under consideration was not formed under any general or special statute. It became what it is—a joint stock company—solely by force of the contract between its members, embodied in their articles of association. They were required by no law to file or—as in England—register these articles, and thereby become an artificial being—a legal entity with a defined *status*—subject to legislative control. They were not even required to reduce the provisions of these articles to writing. *Bank* v. *Van Derwerker*, 74 N. Y. 234. It would seem to be reasonably clear, therefore, that general legislation, merely conferring certain of the privileges incident to corporations upon these subjects of private agreement, fails to change a natural into an artificial being, and no more creates a corporation than would general legislation conferring similar privileges upon ordinary partnerships. It should be considered, in this connection, that such privileges may be withdrawn or modified at will. If, therefore, partnerships or joint stock associations are transformed into corporations by conferring upon them some of the privileges incident to corporations, they can be retransferred simply by the withdrawal of the privileges. Thus the *status*—whether corporate or partnership, artificial or natural—would fluctuate, without regard to the will of the contracting parties, by the mere incident of general legislation upon a given subject. Even if the *status* should be held to depend upon the acceptance of the privileges,—a proposition to which I do not assent,—there is no evidence of such acceptance in the case at bar. The articles of association were signed in 1853. In what particulars they have since been amended does not appear. We must assume, therefore, that the provisions with regard to the death of shareholders, the transfer of shares, the management of the business by directors, and the transfer of real estate through the president were embodied in the original articles of 1853. At this date the only privilege conferred upon such associations, as we have already seen, was that of suing in the name of their president or treasurer; and it does not appear that the present associates ever availed themselves of even this privilege. They certainly had a right, notwithstanding the act of 1849, to sue in the names of the association. Nor does it appear that they ever availed themselves of the privileges conferred by the acts of 1854 and 1867. Though the articles of association entered into in 1853 covered the same ground as that embraced within these later acts, it does not follow that there was an acceptance of the statutory privileges or that the parties ever went outside of their contract for authority. The cases are not entirely harmonious upon this subject. It may safely be asserted, however, that *Sandford* v. *Supervisors*, 15 How. Pr. 172, is the only case where it was distinctly held that these creatures of private contract were corporations, and, as such, liable to taxation; while there are numerous cases to the effect that they are mere partnerships, (*Witherhead* v. *Allen*, *42 N. Y. 564; *McGuffin* v. *Dinsmore*, 4 Abb. N. C. 241; *Iron Works* v. *Smith*, 4 Duer, 362; *Whitman* v. *Hubbell*, 30 Fed. Rep. 81; *Taft* v. *Ward*, 106 Mass. 518; *Bodwell* v. *Eastman*, Id. 525; *Taft* v. *Warde*, 111 Mass. 518; *Gott* v. *Dinsmore*, Id. 45; *Railroad* v. *Pearson*, 128 Mass. 445; *Frost* v. *Walker*, 60 Me. 468; *Bacon* v. *Dinsmore*, 42 How. Pr. 377,) and one, at least, holding that they are not taxable as corporations. *Bell* v. *Streeter*, 1 N. Y. Trans. (N. S.) Jan. 26, 1872, p. 6.

Some of the text-writers treat these joint companies as, in substance, corporations. 1 Wat. Corp. 39; Potter, Corp. § 624; 2 Lindl. Partn. (2d Amer. Ed.) 757; Cook, Stocks, § 505; Browne, Assess. & Tax'n, 491. It will be found, however, that their conclusions rest mainly upon the inaccurate assumption that the companies are organized under the statutes to which I have referred. The *Sandford Case* also had weight with these writers, as well as

certain *dicta* in other cases where the analogies of the law with regard to corporations were applied to particular phases of the joint stock company's relation to creditors, shareholders, and the public.   Thus in *Westcott* v. *Fargo*, 61 N. Y. 542, the commission of appeals held that, under the statutes in question, a shareholder in one of these joint stock express companies might maintain an action against it, in the manner prescribed by law, to recover for goods lost which were delivered to it for transportation, the same as if he was not connected with the company.   The learned commissioner (DWIGHT) pointed out the difference between such an association and an ordinary partnership, in that its property, under the fourth section of the act of 1849 as amended in 1853, is made a fund for the payment of claims against it, distinct from the property of individual members.   The conclusion that the president was, for the purpose of bringing actions, a corporation sole does not seem to have been necessary to the decision.   At all events, the court did not hold that the company itself was a corporation, but only that the statutory representative of the associates was to be treated as a corporation sole for the particular purposes specified in the act.   So in *Waterbury* v. *Express Co.*, 50 Barb. 157, it was held that, in controversies between a shareholder and the joint stock association to which he belongs, courts must follow mainly the analogies afforded by the laws and jurisprudence relating to corporations, instead of those derived from the law of simple partnership.   The statutes in question were dwelt upon, but the cause was decided upon the contract of the associates and its material variation from ordinary articles of partnership.   It was not contended in that case that the company was a corporation.   What was claimed and decided was that, because of the material difference between the shareholders' contract and that entered into between the members of an ordinary partnership, the joint stock company could not be dissolved for reasons which would justify the dissolution of an ordinary partnership.

The cases under the removal acts throw but little light upon the question, though the expressions of the judges doubtless had weight with the text-writers.   In *Fargo* v. *McVicker*, 55 Barb. 440, these companies were treated as corporations for the purposes of removal under the acts of congress; and the court said that, for the purposes of federal jurisdiction, they should be thus treated "whether they be a corporate body, an associate body, a joint stock company, or association,—by whatever designation they may be known." The same rule was laid down in *Fargo* v. *Railway Co.*, 6 Fed. Rep. 787, but the learned circuit judge was inaccurate in the statement that "New York joint stock companies" are "artificial persons,—ideal creatures of the state,"—and that "they are organized under general laws very much as incorporations are now usually organized."   The actual decision was the same in *Whitman* v. *Hubbell*, 30 Fed. Rep. 81, but it was based upon a more accurate view of the companies' *status*.   "The Adams Express Company," said WHEELER, J., "is a partnership and not a corporation.   It has no existence apart from the members and does not appear to be of itself a citizen of any place.   *   *   * The officer is the only defendant on the record, although he represents the association.   *   *   *   The representative character of a party does not affect his right of removal.   It depends upon his citizenship alone, without regard to that of those whom he represents, but are not parties to the record."   The distinction which I have pointed out, between mere creatures of private contract and associations specially endowed by statute with corporate attributes, was clearly presented in *Insurance Co.* v. *Massachusetts*, 10 Wall. 566.   There, the deed of settlement was "legalized and enlarged by the acts of parliament." The corporate attributes were conferred by three acts, obtained by the company.   Such acts were special, (page 569,) and related solely to that particular company, granting to it all the corporate faculties under which it conducted its business.   This was precisely the case of an association conducting business under our free banking act of 1838, except that the latter was a gen-

.eral law, applicable to those who chose to come in under its formative provisions.

The *Sandford Case* proceeded entirely upon what seems to me to be a mistaken view of the eighth article of the constitution. Section 1 of this article provides that "corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the legislature, the objects of the corporation can not be attained under general laws." The third section provides that "the term 'corporations,' as used in this article, shall be construed to include all associations and joint stock companies having any of the powers or privileges of corporations not possessed by individuals or partnerships." The *Sandford Case* substantially treats this third section as a constitutional definition of the term "corporation" wherever it may be found in any existing law. Thus the section is viewed as though it read "the term corporation as used in this article, and as used in the statutes of this state, shall be construed to include all associations and joint stock companies," etc. The term "corporation" is used in the eighth article solely with reference to legislative methods for the formation of corporations. "Corporations," says this eighth article, "may be formed under general laws; so," it adds, "may all associations and joint stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships." "Corporations," it continues, "shall not be created by special act; neither shall associations or joint stock companies," etc. The meaning and intention are perfectly plain. This article was adopted in 1848, while the determined and protracted efforts of associations formed under the free banking act of 1838, to avoid corporate responsibility, were still fresh in the minds of the people. This inclusion of associations and joint stock companies in the term "corporation" was doubtless intended to set all such questions forever at rest. The associations and joint stock companies thus referred to are evidently not such as are the mere creatures of private contract, but associations formed under the provisions of some act like that of 1838; associations created by compliance with the formative regulations of such act and thereupon "having," under that act, "privileges not possessed by individuals or partnerships." The term "corporation" is to be construed to include such associations and joint stock companies, and they, too, may be formed under general laws. No other interpretation seems to have been placed upon this eighth article before the *Sandford Case*, nor, apparently, has any other interpretation been placed upon it since, for, notwithstanding that decision, which was rendered in 1858, no attempt has been made in this country until now thus to tax the capital of these associations. The question was, however, distinctly presented to the Monroe General Term in 1870 or 1871 in the case of *Bell* v. *Streeter*, cited above, and it was held that the association was not thus taxable. Neither the *Sandford Case* nor the eighth article of the constitution was referred to in this case of *Bell* v. *Streeter*, doubtless because it never occurred to the counsel nor to the learned judges (JOHNSON, WELLES, and T. B. STRONG) that the expression "the term 'corporation,' as used in this article," could be extended to its use elsewhere than in that article, or that it was thereby intended to define the term "corporation" as used in the Revised Statutes with regard to the taxing of corporations. That term, as thus used in the Revised Statutes, is clear and unambiguous. Throughout, we find the employment of the expression, "incorporated company." Section 22 even provides, as a penalty for delinquency, that the company may be enjoined from further proceeding under its act of incorporation. There is nowhere a suggestion of an unincorporated association. Yet, in subsequent enactments dealing with state taxation, we find specific reference to such unincorporated associations by name. Laws 1880, c. 542; Laws 1881, c. 361. Thus the legislature distinguished between incorporated and unincorporated bodies in this matter of

taxation; and this would seem, therefore, to indicate anything but a general intent to include the one in the other. My conclusion is that these joint stock companies, formed solely by private agreement, and not under the provisions of any legislative act, are not corporations within the meaning of that term as used in the Revised Statutes with regard to "the assessment of taxes on incorporated companies." It follows that the relator is entitled to judgment.