THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS C. PLATT, as President of the United States Express Company, v. EDWARD WEMPLE, Comptroller of the State of New York.

*Tax on joint-stock company under chapter 542 of 1880, as amended by chapter 361 of 1881 — powers of joint-stock companies — statutes relative to, presumption that a company is organized thereunder — fact of incorporation, how determined.*

The provisions of section 3 of chapter 542 of the Laws of 1880, as amended by section 3 of chapter 361 of the Laws of 1881, declaring that "every corporation, joint-stock company or association whatever, now or hereafter incorporated or organized under any law of this State, * * * shall be subject to and pay a tax as a tax upon its corporate franchise or business," includes an association organized as an express company by articles of agreement, signed by five or more persons, which provide for the issuing of stock, and for the assignment thereof, and for the assignee thereof becoming a member of the company, for the making

of assessments on such stock by a board of directors designated therein; for a forfeiture of the stock, in case of their non-payment; for the election of directors by ballot by the stockholders entitled to a number of votes equal to the number of shares held by them, respectively; placing the power of management in the board of directors; providing that its real estate, bonds and mortgages are to be executed by the president and his successors, and that suits are to be brought in his name; that the death or legal incapacity of any associate shall not operate as a dissolution of the company; that the survivors may continue to prosecute the business of the company, and that on the death of a shareholder the survivors may purchase his shares, unless his heirs, being legally competent, elect to retain them.

The insertion of the words " or organized " by the amendment (chap. 361 of 1881) indicates that the legislature did not intend to confine the third section of the act to bodies which were in strictness incorporated, but intended to include also bodies which were organized under the laws of the State.

It would seem, in view of the provisions contained in section 3 of article 8 of the Constitution of the State of New York, that the word " corporation" may sometimes be used to include joint-stock companies.

The statutes of the State of New York, relating to joint-stock companies, conferring upon them the privileges,

*First.* To sue and be sued in the name of the president.

*Second.* Not to be dissolved by the death of a stockholder or by his assignment of his stock.

*Third.* To purchase, hold and convey property in the name of the president.

*Fourth.* To extend the term of their existence by the consent of two-thirds of their stockholders against the wish of the other third.

*Fifth.* That three-fourths of the directors may reduce the capital stock.

*Sixth.* That the stockholders are not liable for debts of the association, except after judgment and executions returned unsatisfied against it — distingush such joint-stock companies from mere partnerships.

Where an association is formed under articles of agreement which provide for the exercise of these privileges mentioned in the statute, although no reference is made in such articles to the statute conferring them, the association will be presumed to have been organized under such statutory provisions.

The decision of the question as to whether an association of individuals constitutes a corporation is not to be determined by the fact that the term, " corporation," is or is not used in its creation, but upon the question whether the body so created possesses the powers and faculties usually enjoyed by corporations; nor is the question one whether the business which is carried on might not be carried on by private persons, but whether the body, in the conduct of such business, exercises the privilege of corporate action.

CERTIORARI issued, directed to the comptroller of the State of New York, commanding him to certify and return to the Supreme Court all proceedings taken by him in reference to the assessment of a tax, under chapter 542 of the Laws of 1880, as amended by

chapter 361 of the Laws of 1881, upon the United States Express Company.

Edward Wemple, comptroller of the State of New York, in return to such writ, certified that prior to the 9th day of April, 1888, the United States Express Company was, on several occasions, called upon by the comptroller of the State of New York to present reports to him as to the amount of its capital stock employed within this State, for the purpose of enabling said comptroller to settle and adjust the taxes and penalties due from said United States Express Company to the State of New York, under the provisions of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and chapter 501 of the Laws of 1885; that the United States Express Company refused to make such reports, and thereupon the comptroller proceeded to settle, fix and determine the amount of taxes and penalties due and unpaid from said company to the State of New York, the return setting forth the assessment so made for the years ending November first, from the year 1880 to the year 1887, both inclusive.

The question presented by the *certiorari* was whether the relator, the United States Express Company, was taxable under the third section of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881.

Chapter 542, Laws of 1880, section 3, declares that "every corporation, joint-stock company or association whatever, now or hereafter incorporated under any law of this State," except, etc., shall be subject to and pay a certain tax, which is estimated by a certain percentage on dividends; and if there are no dividends, by a certain percentage on the valuation of the capital stock made according to the provisions of section 1. Section 6 of the same act imposes, "in addition to the taxes above provided, that every corporation formed for railroad, * * * purposes, and every elevated railway company, and every other corporation, joint-stock company or association, * * * engaged in the business of transporting freight or passengers" shall pay a tax to the State. This is a tax on gross earnings for business transacted in this State. The said section 3 was amended by chapter 361 Laws of 1881, so as to read in the clause above quoted "incorporated or organized." It was again amended by chapter 359, Laws of 1885, but not so as to change this clause.

The United States Express Company is an association formed by articles of agreement dated April 22, 1854, signed by five or more persons. The agreement adopts the aforesaid name; provides that its capital stock shall be 5,000 shares of $100 each, which number may be increased or diminished by the board of directors; provides for certificates of stock and for the assignment thereof, and for the assignee being a member of the company; and that the assignor shall not be liable for subsequent liabilities of the company. The agreement further provides for the making of assessments by the directors to pay losses, and authorizes the directors to forfeit and sell stock when the holder does not pay his assessment; for the election of directors by ballot, each shareholder being entitled to votes equal to the number of his shares, and that the board of directors may fill vacancies. A meeting of shareholders for the election of directors is to be called at the request of two-thirds in amount The full power of management in every respect is placed in the board of directors. Deeds of real estate, bonds and mortgages are to be made to the president and his successors. Suits to be brought in his name. The death or legal incapacity of an associate is not to operate as a dissolution. The survivors may prosecute the business, and on the death of a shareholder the survivors may purchase his shares, unless his "heirs," being legally competent, elect to retain them. Said company was extended to a further term of twenty years from May 1, 1864, and by a vote of the directors was extended twenty years from May 1, 1884.

On the 9th of April, 1888, the comptroller assessed on the company a tax, under the aforesaid third section, for the years 1880 to 1887, and also assessed the penalties prescribed. On its refusal to pay the comptroller issued his warrant. This action is brought to review his proceedings and restrain the collection. It is agreed that the only question is whether, under the laws and the Constitution, the company is liable for those taxes, or any of them.

*William W. Mac Farland* and *Clarence A. Seward*, for the relator.

*William A. Poste*, deputy attorney general, for the respondent.

LEARNED, P. J.:

The insertion of the words "or organized," by the amendment of 1881, indicates that the legislature did not intend to confine the third section to bodies which were, in strictness, incorporated, but intended to include also bodies which were organized under the laws of the State ; so that the question is whether this company is a joint-stock company or association, organized under the laws of the State, and, perhaps, as to the tax of 1880, whether it is a corporation, though it would seem, by section 3 of article 8 of the Constitution. That the word "corporation" may sometimes be used to include joint-stock companies, so that it may not be inconsistent to speak of a joint-stock company as being also a corporation.

We may notice here that a peculiar rule exists as to what are called mining partnerships, which are formed when several tenants in common of a mine unite in working it. In these cases, partly because there are several interests in the land which any owner may transfer, and partly from the necessity of the case, one person may convey his interest without dissolving the partnership. (*Kahn* v. *Smelting Co.*, 102 U. S., 641.) It is desirable to observe this, and not to reason in regard to other partnerships from the peculiarity of that class.

The counsel for the relator insists that the Court of Appeals has decided that this third section embraces only corporations. The decisions supposed to establish this are: *People* v. *Home Insurance Company* (92 N. Y., 329); *People* v. *Equitable Trust Company* (96 id., 393) ; *People* v. *Gold and Stock Tel. Company* (98 id., 67). Now, the question in the first case (aside from that of constitutionality) was whether the fact that the dividends were derived in part from exempt securities invalidated the law. The court held that it did not, because the tax was not on property but on franchise or business. No question was made as to whether joint-stock associations were included or whether they were not corporations.

The court was only defining the nature of the tax as distinguished from one on property. The very section in question used the words "corporate franchise or business," after naming the bodies subject to the tax; and if anything is to be drawn from that opinion it is that these joint-stock associations are corporations, for the court says, at page 340, that the aforesaid act of 1881, after "describing

the *corporations* subject to its provisions, continues as follows:" thus, including joint-stock companies and associations under that name of *corporation*. But, as we have had occasion to remark before, decisions of courts are authoritative on the matters necessarily decided, not upon every expression in an opinion.

The next case held that, as to foreign corporations, the tax was upon business. In the third case the counsel for the relator insist that the court declared that the act " deals, as its title declares, with the subject of taxation of corporations, and no other matter." The court immediately after these words cited the title itself, which mentions joint-stock companies and associations, thus implying that the title declared that such associations were corporations. But there was really no question presented as to joint-stock associations; and no decision made. It may be noticed, also, that in the cases in the Supreme Court of the United States, viz. : *Society for Savings* v. *Coite* (73 U. S. [6 Wall.], 594) and *Provident Institution* v. *Massachusetts* (Id., 611), no distinction is suggested between corporations strictly so-called and joint-stock associations. Thus it is said in the last case " That private corporations and all trades and avocations by which the citizens acquire a livelihood may be taxed."

The counsel for the relator . insist that this express company is simply a partnership, with no privileges of corporate action under the laws of this State. The decisions of other States that, in those States, such associations are partnerships, or even that they are partnerships in New York, have no binding force here. (*Taft* v. *Ward*, 106 Mass., 518; *Boston and Albany R. R. Co.* v. *Pearson*, 128 id., 445.) We must determine the question under our own laws and decisions. Chapter 258, Laws of 1849, provides that any joint-stock company or association, consisting of seven or more shareholders, may sue or be sued in the name of the president. Chapter 153 of the Laws of 1853, provided that, after judgment thus recovered and execution returned unsatisfied, suits might be brought against shareholders or associates with some further provisions in this respect. This statute seems to be substantially re-enacted in the Code of Civil Procedure, sections 1919 and 1923, inclusive. Chapter 245 of the Laws of 1854, authorizes these associations to provide that the death of a stockholder or the assignment of his stock shall not work a dissolution ; also, that they may devolve on three or

more of the partners the sole management of the business. Chapter 289 of the Laws of 1867 authorizes these associations to purchase, hold and convey real estate, and provides that conveyances shall be made to and by the president. Chapter 937 of the Laws of 1867 authorizes these associations, by consent of stockholders owning two-thirds in amount of the capital stock, to extend the time of existence. Chapter 290 of the Laws of 1868 authorizes the directors, by consent of three-fourths of their number, to reduce the capital stock. Chapter 599 of the Laws of 1881, authorizes a majority of the stockholders at a meeting to reduce the number of trustees. Chapter 505 of the Laws of 1885, requires every such association to file a statement annually of its name, date of organization, law under which it is organized, etc.

From these statutes it may be seen that these associations have these privileges: 1. To sue and be sued in the name of their president. 2. Not to be dissolved by the death of a stockholder or by his assignment of stock, which is really to have perpetual succession during their term. 3. To purchase, hold and convey property in the name of the president, thus making an exception to 1 Revised Statutes (m. p. 728, § 49). 4. To extend the term of existence by consent of two-thirds against the wish of the other third. 5. That three-fourths of the directors may reduce the capital stock. 6. That the stockholders, under the act of 1853, should not be liable for debts of the association, except after judgment and execution unsatisfied against the association. This may be modified by the first sentence of section 1923 of the Code.

This express company has, in its articles of agreement, accepted these privileges by assuming nearly all of them specifically. The right to sue by its president is assumed by this present litigation. Now, these are not privileges which a simple partnership, as such, possesses. It is true that by the Code (§ 1919) the right to bring an action in the name of the president is extended to some partnerships. Still, that is a special statutory right, and its extension to partnerships is no indication that this express company obtains such right by its own agreement and not by statutory law. If an association, by the language of its articles of agreement, assumes the privileges which are given by the statutes of the State, it certainly cannot say that, because the articles make no reference to these

statutes, therefore the association is not organized under them.    The counsel for the relator insists that the capital stock has none of the legal characteristics of the capital stock of a corporation.    In fact, it has all those characteristics.    The articles of agreement speak of the capital stock, of its shares, of certificates or scrip, of the absolute right of assignment thereof, " in the usual form," and of the record of the same.    In short, there is no difference whatever.

The counsel for the relator also drew an argument from section 5 of the above-cited act of 1849, which act is not superseded by the Code. That section was to the effect that nothing in the act contained should be construed to confer on such associations " any of the rights and privileges of corporation, except as herein specially provided."    But if that section had any meaning, it implied that some rights and privileges of corporation were conferred by the act; as they certainly were.

It cannot be justly said by the relator that all these privileges arise from its own agreement, and are such as any partnership might acquire at common law.    Two, especially, are of great value, and do not spring from its agreement merely : The right to hold property in the name of its president, and the right to sue and be sued in his name, even against and by its own members.    At common law, as held in the above cited Massachusetts cases, such suits could not be maintained. We think, then, for the reasons above given, that this company is a joint-stock association organized under a law of this State.

We must further consider whether, within the meaning of this statute, it is a corporation.    We have already noticed that, under the Constitution, the word corporation may embrace what is usually known as a joint-stock association, and, therefore, our conclusion that this company is a joint-stock association is not necessarily conclusive on the question whether it is a corporation under the statute in question.    In *Thomas* v. *Dakin* (22 Wend., 9, at page 70) it was said that " a corporate body is known to the law by the powers and faculties bestowed upon it."    " The use of the term corporation in its creation is of itself unimportant, except as it will imply the possession of these."    The court proceeded in that case to mention the powers and faculties.    They are such as have been above mentioned, with the exception of the right to have a common seal, which

the court say may be dispensed with altogether. For it had long since been held that corporations may contract without seal, and as conveyances were to be made by the president, his seal was sufficient to a deed. The court was of the opinion that associations having these powers were corporations. It is only necessary to refer to the very full and exhaustive opinions then delivered. Nor need we refer to all of the subsequent decisions. The correctness of that decision on this point is settled. (*Supervisors of Niagara* v. *People*, 7 Hill, 504.) It rested, as will be seen, on this principle, that a body which possesses the powers and faculties of a corporation is a corporation.

A similar question arose in *Liverpool Insurance Company* v. *Massachusetts* (77 U. S. [10 Wall.], 566). The plaintiff was a joint-stock association organized in England. Acts of parliament had expressly provided that the company should not be a corporation. A law of Massachusetts imposed a tax. The Supreme Court examined the question whether the plaintiff was a foreign corporation, and the court held that it was, because it possessed the attributes deemed essential to corporate character. These were : 1. An artificial name. 2. The right to sue and be sued in the name of an officer. 3. Perpetual succession by transfer of stock. 4. Existence apart from the stockholders, which enabled it to sue and be sued by them. All these, and more, this express company has.

In *Fargo* v. *Mc Vicker* (55 Barb., 437) it was held, on the question of removal to a Federal court, that an express company like the present was a corporation. To the same effect, *Fargo* v. *Lowville and C. R. W. Co.* (6 Fed. Rep., 787). Neither the case of *National Bank* v. *Vanderwerker* (74 N. Y., 234), nor that of *Bray, President* v. *Farwell* (81 id., 608) decide anything upon this point.

An unreported case of *Bell* v. *Streeter* is cited by counsel for relator where it was held that a certain company was not taxable as a corporation. The opinion says that none of the privileges of the company were of the essence of a corporation. See, on the other hand, *Bank of Watertown* v. *Assessors* (25 Wend. 686) and *Sandford, President,* v. *Supervisors* (15 Hun, 172), where the court held such an express company to be a corporation, and as such liable to taxation. See, also, *People* v. *Assessors* (1 Hill, 622), where the court held again that associations under the general banking law were corporations, and taxable as such, and

remarked: "It may be true, as has been argued, that the legislature intended to make a legal being and give it all the essentials of a corporate body, and yet that it should not be a corporation. That the legislature could not do.   *   *   *   Human powers are not equal to the task of changing a thing by merely changing its name." It seems to us that such is the task the relator undertakes. Having all the essentials of a corporation, it claims that it is not a corporation, because it has not been so named, and because of the negative effect of section 3 of the act of 1854, to which the above-quoted remarks of the court are forcibly applicable.

It must be observed that the question is not as to the privilege of conducting the business of a common carrier. The relator has urged that because it is the common-law right of any person to be a common carrier, therefore, the relator has derived no privilege from the State. But this is not sound. We have in this State a multitude of corporations which carry on business of a kind which any private person might carry on. For instance, manufacturing companies. What they derive from the State is only the privilege of corporate action, not the privilege of manufacturing. Any individual may manufacture; but if several individuals, desirous of manufacturing, wish to do this with the convenience of action possessed by a corporation, then they must obtain from the State that privilege. On the other hand, there are certain things which neither individuals nor corporations may do without authority from the State: For instance, issue notes as a circulating medium. But the privilege which this relator has obtained from the State is that of a corporate action, not that of exercising that action in any special business. The individual members might carry express packages all their lives, or they might form a partnership and do the same thing till a partner died; and in each case they would be exercising common-law rights simply. But when, by virtue of statute law, they assume perpetual succession, the right to hold real estate in the name of their president, and the other privileges which have been above noticed, they then have organized themselves into a corporate body, a corporation. The constitutionality of the act under the State Constitution we supposed to be settled. As to the United States Constitution, it is to be observed that by stipulation the only question to be argued is whether the relator is taxable for the tax.

The mode of computation, therefore, is not in question. (See, also, *Western Union Telegraph Company* v. *Massachusetts*, 125 U. S., 530.) The case of the *Home Insurance Company* v. *New York* (119 U. S., 129) affirmed the same case in this State, holding this tax to be on franchise. (See, also, *Hamilton Company* v. *Massachusetts*, 73 U. S., 633.) The question is suggested whether this tax interferes with inter-state commerce. This subject has been so fully discussed in the Supreme Court of the United States that it cannot be profitable for us to do more than to state the conclusion that we think this tax does not so interfere with commerce between the States as to be unconstitutional. (*Delaware Railroad Tax*, 85 U. S. [18 Wall.], 206.)

The application of the relator to set aside the proceedings of the comptroller is denied, and his proceedings and determination affirmed, with fifty dollars costs and disbursements.

LANDON, J., concurred; INGALLS, J., dissented.

Application to set aside proceedings of comptroller denied and proceedings and determination affirmed, with fifty dollars costs and disbursements.