CHARLES E. RITTENHOUSE *and others* v. THE INDEPENDENT LINE OF TELEGRAPH.

The defendants, a telegraph company, received from the plaintiffs, at Washington, D. C., a dispatch to be transmitted over its line to the plaintiff's agents in New York, directing them to sell for plaintiffs their " Southern Michigan before board : buy five Hudson at board." The dispatch, as received by the plaintiffs' agents, directed them to sell their Southern Michigan stock before board, and " buy five *hundred* at board." The agents sold the plaintiffs' Southern

Rittenhouse v. The Independent Line of Telegraph.

Michigan stock before the board, and, at the board, purchased five hundred shares of the same stock. The plaintiffs on being apprised by telegraph the same day of the transaction, sent another dispatch, correcting the error, and repeating the first order. This dispatch being received after the adjournment of the board of brokers, the agents sold on the street the five hundred shares of Michigan Southern R. R. stock, purchased by them, at a loss of four hundred and seventy-five dollars, and purchased, at the lowest price, five hundred shares of the Hudson River R. R. stock, which was, for the whole number of shares purchased, one thousand three hundred and seventy-five dollars more than the same could have been bought for at the board of brokers that day.—*Held,* that the plaintiffs were entitled to recover of the defendants the difference between the price at which the five hundred shares of the Hudson River R. R. stock could have been bought at the board of brokers, and the lowest price for which the same could have been, and was, bought after the adjournment of the board, on the receipt of the corrected despatch.

*Held,* also, that as the language used in the dispatch, however indefinite to others, was intelligible to the agents, they were not charged with the duty of making further inquiry before acting upon it.

*Held,* also, that defendant having placed it beyond the power of the plaintiffs' agents to make the purchase of the five hundred shares of the Hudson River R. R. stock *at the board of brokers,* it could not avail itself of the fact that the purchase was made on the street after the adjournment of the board, it not appearing that it was injured by the circumstance.

*Held, further,* that the plaintiffs were not entitled to recover the difference of four hundred and seventy-five dollars on the sale of the five hundred shares of Michigan Southern R. R. stock. In legal effect, it was purchased on the defendant's account, and could not be sold without notice to the defendant.

APPEAL by the defendants from a judgment at Special Term. The case was tried before DALY, J., without a jury, by consent of parties.

The action was brought to recover of the defendant, a corporation having and controlling a line of telegraph between the city of New York and Washington, D. C., damages for a mistake in a message transmitted over the defendant's line, by the plaintiffs, at Washington, to their brokers, Drexel, Winthrop & Co., at New York.

It was shown on the trial, that on the 14th day of October, 1863, the plaintiffs delivered to the defendant at its office in Washington, the following message, directed to Drexel, Winthrop & Co :

"If we have any old Southern on hand, sell same before board "—buy five Hudson at board—quote price."

"RITTENHOUSE, FANT & Co."

The message received by Drexel, Winthrop & Co., was as follows:

" If we have any old Southern on hand, sell same before board
"—buy five hundred before board—quote price.

" RITTENHOUSE, FANT & Co."

By an understanding between the plaintiffs and their brokers, the words " old Southern " in the message meant Michigan Southern Railroad stock. The words " five Hudson " meant five hundred shares of Hudson River Railroad stock; and the word " board " meant the stockbrokers' board in New York. The agents, without suspicion of the error in the telegram, sold all the Michigan Southern of the plaintiffs' before the morning board, and purchased five hundred shares of the Michigan Southern stock at the board for the plaintiffs, at forty-four thousand three hundred and thirty-seven dollars and fifty cents, that being the lowest price for which they could be bought. Immediately after the purchase, the brokers notified the plaintiffs by telegraph, of the purchase, and price. The same day, the plaintiffs directed their brokers, by telegraph, to cancel the erroneous sale and purchase of the Michigan Southern stock, and to purchase the five hundred shares of Hudson River stock. The message was received late in the day, and after the board adjourned. The brokers sold on the street, the same afternoon, the five hundred shares of Michigan Southern, for the best price they could obtain, forty-three thousand eight hundred and sixty-two dollars and fifty cents, being four hundred and seventy dollars less than they had to pay for them at the board. They also purchased on the street, five hundred shares of the Hudson River Railroad stock, as directed by the plaintiffs, at one hundred and thirty-nine dollars and fifty cents per share, that being the lowest price at which they could be obtained. The lowest price at which the same stock was sold at the morning board on that day was one hundred and thirty-six dollars per share, and the average price was one hundred and thirty-six dollars and seventy-five cents; making a difference between the lowest price at the morning board, and the price paid by the plaintiffs' brokers, on the whole five hundred shares, of one thousand seven hundred and fifty dollars, and a difference be-

Rittenhouse v. The Independent Line of Telegraph.

tween the average price at the morning board, and the price paid, of one thousand three hundred and seventy-five dollars.

The broker testified that had the correct despatch been received by him, he would have purchased the five hundred shares of Hudson River stock, for the plaintiffs, at the first board in the morning.

The testimony on behalf of the plaintiffs being closed, the defendant's counsel moved to dismiss the complaint, on the following grounds:

1. That the message as delivered by the defendant to Drexel, Winthrop & Co., was so indefinite and uncertain in its directions to buy, as to put them upon inquiry as to its meaning; which was overruled by the Court.

2. That the words *five hundred* in the connection in which they were used in the message as delivered, conveyed no authority to Drexel, Winthrop & Co. to purchase Michigan Southern Railroad stock; which was overruled by the Court, the Court deciding that the message as delivered, authorized Drexel, Winthrop & Co. to purchase five hundred shares of Michigan Southern Railroad stock.

3. That the purchase of five hundred shares of Michigan Southern Railroad stock, by Drexel, Winthrop & Co., was not a legitimate consequence or result of the defendant's error in the delivery of the message; which was overruled by the Court.

4. That on discovery of the error in the message as delivered after the purchase of Michigan Southern Railroad stock, it was the duty of the plaintiffs, or their agents, Drexel, Winthrop & Co., to notify defendant of the purchase, and give the defendant an opportunity to adopt it, and assume the consequences thereof. The Court sustained this point, and held and decided that as no such oportunity was given the defendant, but on the contrary, the plaintiffs sold the said stock without consulting the defendant, the plaintiffs could not recover any loss incurred by such purchase and sale. To this ruling, the plaintiffs' counsel excepted.

5. That the purchase of the Hudson River Railroad stock was a voluntary purchase, made with full knowledge on the part of the plaintiffs of the error in the delivery of the message, and of the market price of said stock, and that the damages alleged and claimed by the plaintiffs to have resulted therefrom, were

speculative merely, and did not result from the defendant's error. The Court overruled this point, and the defendant's counsel excepted.

6. That the purchase of Hudson River Railroad stock made by Drexel, Winthrop & Co. was not made in accordance with the directions of the plaintiffs, inasmuch as such purchase was not made *at the board*, and the defendants could not be liable thereon; which was overruled by the Court, and the defendant's counsel excepted.

7. That the negligence and carelessness of the plaintiffs and their agents, in misconstruing the telegram, contributed to the injury alleged, and the plaintiffs could not recover; which was overruled by the Court, and the defendant's counsel excepted.

8. That after the discovery of error, and before purchasing the Hudson River Railroad stock, it was the duty of the plaintiffs to notify the defendant, and having omitted to do so, the plaintiffs could not recover for the loss on the purchase; which was overruled by the Court, and the defendant's counsel excepted.

The Court, thereupon, decided that the plaintiffs were entitled to recover of the defendant the sum of one thousand three hundred and seventy-five dollars, with interest thereon from the 14th day of October, 1863, amounting in all to the sum of one thousand four hundred and twenty-five dollars and eighty-nine cents, and entered judgment accordingly.

From the judgment entered on this decision, the defendant appealed to the General Term.

*Edward Fitch*, for appellant.

I. The defendant is not a common carrier. It does not undertake to carry either persons or merchandise. It is simply a contractor undertaking to perform labor and services, and is liable only for damages for non-performance of its contract.

II. The damages claimed are not the immediate, consequential and necessary results of the mistake of the defendant, but are remote consequences which could not be produced by the action of the plaintiffs through their agents (*Wibert* v. *N. Y. and Erie R. R. Co.*, 19 Barb., 36).

III. The first message was so indefinite and uncertain in its directions to purchase, that the brokers should have been put up-

Rittenhouse v. The Independent Line of Telegraph.

on their guard, and were charged with the duty of making further inquiry before acting under it.

IV. The plaintiff's first message directed the purchase of "five Hudson *at board*." Their second message repeated the first in substance, and directed their agents to "execute balance of order." The agents were therefore clearly and emphatically commanded to purchase the Hudson River Railroad stock *at the board*. They purchased it on the street after the adjournment of the board, in violation of the directions, and the defendant cannot be charged with the consequences. If they had followed instructions, and made the purchase at the next morning board, it does not appear that any loss would have followed. This point is fatal to that branch of the plaintiffs' claim upon which a recovery was had, and the complaint should have been dismissed.

*E. Sprout*, for respondents.

BY THE COURT.—BRADY, J.—The dispatch written by the plaintiffs was an order to their brokers here to sell their Michigan Southern Stock and to buy five hundred shares of Hudson River Railroad stock. The language employed, however indefinite to others, was intelligible to the brokers. The dispatch written was not sent, and the effect of the error was to make it an order to sell the shares of Southern, and to buy five hundred more. As to this the erroneous dispatch is neither uncertain nor indefinite. No other interpretation can be fairly given to it. The evidence established the fact that the use of words "five Hudson," by an understanding between plaintiffs and their brokers, meant five hundred shares of the Hudson River Railroad Stock, and also, that the erroneous dispatch was understood to be an order to purchase five hundred shares of the Michigan Southern, and which, as before suggested, was the only conclusion to be drawn from the language employed. These views dispose of the exceptions to the sufficiency of the evidence to warrant the findings of fact upon which the judgment is based. The plaintiffs, on learning that an error had been committed, again directed the purchase of Hudson River Railroad Stock, and were entitled to the advantages of such purchase at the rates prevailing on the day of the date of the dispatch, without reference to the ses-

sion of the board, when the dispatch was received. The omission to buy at the board on that day arose from the defendants' misconduct in sending the dispatch, and it became the duty of the broker under his instructions to make the purchase at once. The defendants having placed it beyond the power of the plaintiffs' brokers to make the purchase in the particular manner indicated, they cannot avail themselves of the fact that the purchase was not made in that mode. They cannot take advantage of their own wrong, particularly when it nowhere appears that they were injured by the circumstance. The prices paid were the lowest at which the stock could be obtained, and the defendants had the benefit of that fact. The purchase was voluntary, it is true, but it was an act which the plaintiffs had the right to perform, growing out of their relations with the defendants, established by the contract on the part of the latter to transmit the dispatch faithfully. These views are responsive to the exceptions taken to the legal conclusions arrived at upon the trial, and leaves but one to be considered.

The plaintiff's claim for a difference of $475 on the sale of the five hundred shares of Michigan Southern, was disallowed, upon the ground that the stock was, in legal effect, purchased on defendants' account; and could not be sold without some notice to them. I think this ruling was a proper one, the relations of the parties being considered. If the plaintiffs intended to disavow the purchase, the defendants should have been notified thereof, and in that way enabled to keep the stock or not, as they might deem most advisable. By exercising the act of ownership in the sale made, they have adopted the purchase, and the sale must therefore be regarded as on their account. But if this view be incorrect, there can be no doubt that the defendants were entitled to notice of the mistake made by them, before any sale of the stock purchased, in pursuance of their erroneous dispatch, was made. For these reasons the judgment must be affirmed.