GEORGE A. GOTT *vs.* WILLIAM B. DINSMORE & others.

Statutes of another state authorizing the formation of joint stock companies, but not conferring upon them any of the rights or privileges of corporations, except as specially provided, contained a provision that suits against them should, in the first instance, be prosecuted in the name of the president or treasurer, but that after judgment against a company in such a suit and the return of execution unsatisfied, a suit might be brought against the members individually. *Held*, that this provision was local in its operation, and that a suit in this Commonwealth might be, in the first instance, against the members of the company as partners.

In an action against an express company for the loss of the plaintiff's trunk, the admissions of the defendants' general agents, or of a freight clerk to whom those agents have referred the plaintiff for information as to the manner of the loss, made in answer to inquiries by the plaintiff, are admissible in evidence against the defendants.

In an action against an express company for the loss of the plaintiff's trunk, the plaintiff testified that he had been a freight clerk of the defendants at one of their offices; that on the same day on which he left their employ he delivered the trunk to his successor, who asked him if he would send it by express; that he said he would; that he paid nothing for the carriage and supposed it would go free, but expected to pay if asked; and that the company always forwarded the baggage of the employees to and from the different offices. *Held*, that this testimony would warrant the jury in finding that the bailment was not gratuitous.

A stipulation limiting the liability of common carriers, contained in a receipt for goods given by them to the sender of the goods, on his request, after the goods were lost, does not affect the sender's rights, nor are they affected by the fact that he had been recently their freight agent, and the receipts given by him as such contained the same stipulation.

CONTRACT against William B. Dinsmore, E. S. Sanford and S. M. Schumaker, " doing business at Boston, as a partnership or joint stock association, under the name and style of the ' Adams Express Company.' " The declaration alleged that the defendants were common carriers between Boston, New York and Savannah ,

that they received from the plaintiff at Savannah a trunk containing clothing, which they agreed to transport and deliver at Boston ; that when the trunk was delivered by them to the plaintiff, it had been broken open and part of the clothing was gone ; and that the loss and damage were occasioned by want of due care on the part of the defendants in transporting the trunk to Boston.

At the trial in the Superior Court, before *Putnam*, J., the plaintiff put in evidence the answers of the defendant Dinsmore to interrogatories filed by the plaintiff ; the material part of these answers was as follows :

" I am not a stockholder in the association known as the Adams Express Company. There is no stock known as the Adams Express Company's stock. The interest in the association is divided into shares. I am the owner of some such shares, and was in October 1865. The Adams Express Company is a joint stock association formed under the laws of the State of New York ; but the defendants are not and never have been the Adams Express Company, and never did business under that name. The Adams Express Company was constituted many years since, and at that time there were certain written stipulations with reference to the nature of the business to be transacted, and the interest of the stockholders therein drawn up. The company was afterwards substantially reconstructed, and no articles were signed to my knowledge by those who now constitute the company. I am and have been for many years president of the Adams Express Company. The list of stockholders varies. The stock is freely sold in the market. The Adams Express Company were common carriers and expressmen between Boston and New York, and New York and Savannah, in October 1865. Waldo Adams was the Boston agent. John Hoey was the New York agent. One Marsh was employed in some capacity in New York, but I cannot fix dates. When losses happen in the transportation of baggage by the company between Savannah and New York, the question to what person the matter shall be referred depends entirely upon the nature of the loss, so far as I am informed. When losses happen in transportation between New York and Boston the matter is referred to the division superintendent. The company has no connection

with any express between Boston and Rockport. I know of no arrangement with the employees of the company to transport their baggage to and fro from the different places of business of the company free of charge."

It was agreed that the other defendants would make like answers, and would admit that they were shareholders or held stock in the association known as the Adams Express Company. The plaintiff also put in evidence the Sts. of New York of 1849, *c.* 258, and 1853, *c.* 153.*

The plaintiff's deposition was then put in evidence, the material part of which was as follows: " I was in the employ of Adams Express Company at Savannah for about nine months. I left their employ on October 4, 1865. I shipped my trunk from Savannah to Rockport by Adams Express. I delivered it at the office of the company to E. P. Tunison, their agent, who received my trunk and entered its address upon the way-bill. An express company's tag, addressed ' George A. Gott, Rockport, Mass.' was put upon the trunk, and also its weight, eighty-nine pounds. I left Savannah on October 4, and arrived at Rockport October 9. I did not see my trunk till several days after my arrival. When I delivered it, it was properly locked, strapped and covered with canvas. When I received it, it looked all right outwardly, but on unstrapping it, I found it was cut, the lock was broken, and nearly all the contents gone.

" After I discovered the loss I came to Boston, and reported it to Waldo Adams; he said he wished I would go to New York and report it to John Hoey, and have him look up the matter, and if necessary, put on the detectives, as this was not the first time of their having similar trouble. I went to New York, and explained the matter to Hoey. He referred me to Marsh, the head freight clerk. Marsh told me that he sent a wagon three times to the steamer for the trunk and the other parcels, and finally got them on Friday; that the steamer arrived on Tuesday; and that this baggage was separate from the rest of their freight. I think he said it was in the fore-hatch, and on re-waybilling it to Boston

* These statutes are given in the margin of 106 Mass. 522.

they noticed that it was very light, and put it on to the scales, and found it weighed forty-six pounds. He told me that it came in the steamer Varana, and that the company's freight was taken out immediately after her arrival, except these four pieces which they sent for three times. I saw Hoey again and told him that the trunk was received three days after the arrival of the steamer; that their way bills showed that it weighed but forty-six pounds when it left the office in New York; that the Savannah way bills showed a weight of eighty-nine pounds; and that this showed that the robbery occurred between the leaving of the Savannah office and the leaving of his office. He said he would look into the matter, and requested me to call in a few days. I saw Hoey afterwards. I learned nothing new and was requested to call again. I had several subsequent conversations with Hoey. He finally requested me to furnish him with an affidavit of a list of the articles lost. I did so. I saw him afterwards. He said the steamboat company ought to pay me, and requested me to go down and see them, and sent Marsh with me. I saw the agents of the steamboat company. On my return I told Hoey that the agents did not know me in the matter at all, and said if the Adams Express Company had any claims, they should present them, and they would do what was right and honorable. I do not know that there was any further conversation at that time. Hoey was very indifferent. I took no receipt from the defendants' office at Savannah when I delivered my trunk there. I know some of the managers of the Adams Express Company. I do not know that I can give the stockholders' names. William B. Dinsmore, John Hoey, S. M. Schumaker and Waldo Adams were stockholders. I do not know any others." The plaintiff also deposed to the value of the articles taken from the trunk.

Cross-examination: " I was not in the employ of the Adams Express Company when I left Savannah. I left their employ the afternoon I left Savannah; I made way bills up to three or four o'clock, when Tunison took my place. I then left the office and went to the steamer. When I left their employ my trunk was in their express office. I delivered it to Tunison. He asked me if I would send it by express; I told him I would, as I was to stop

in New York and did not care to have it with me. Nothing was said about my paying for sending the trunk. I did not offer to pay anything. I expected to pay, if they charged me anything, what they charged; I supposed it would go free; there would be charges from Boston to Rockport; I expected it would be free to Boston. I did not expect the Adams Express Company would charge me anything to Boston. While in the employ of the company at Savannah, I at first acted as cashier; afterwards I had charge of the northern freight department; I had charge of receiving and delivering freight from and to the north. It was the custom of the company to give receipts for goods received to be forwarded, when parties wished it. I did not ask for a receipt. I do not know why I did not. I never did. I do not know that I ever knew a clerk to ask. The company always forwarded the baggage of the employees to and from the different offices. I do not know that any one ever paid the company anything on my account for forwarding the trunk. No money was ever demanded of me by the company for this service. I have received a receipt for this trunk from the company. I received it in March 1866. I produce it.* The printed portion of the receipt is the same as

---

* The material part of the receipt was as follows : " Adams Express Company, Great Eastern, Western and Southern Express Forwarders. No. 1. Savannah, October 4, 1866. Received of George A. Gott, one trunk. Value —— Marked George A. Gott, Boston, Mass., which it is mutually agreed is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation.

" It is part of the consideration of this contract, and it is agreed that the said express company are forwarders only, and are not to be held liable or responsible for any loss or damage to said property while being conveyed by the carriers to whom the same may be by said express company intrusted, or arising from the dangers of railroads, ocean or river navigation, steam, fire in stores, depots, or in transit, leakage, breakage, or from any cause whatever, unless, in every case, the same be proved to have occurred from the fraud or gross negligence of said express company, or their servants ; nor in any event shall the holder hereof demand beyond the sum of fifty dollars, at which the article forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them, and so specified in this receipt, which insurance shall constitute the limit of the liability of the Adams Express Company. For the Company, Tunison."

of those given by me in the course of my employment by the company. The amount of freight is never stated on the receipt unless paid. The blank is not filled unless paid; if there is freight to be paid it is left open, not even a scratch on it; if it is free it is marked ' D. H.' or ' free.' The company had no office at Rockport. The Rockport Express brought my trunk there. I do not know that the Rockport Express had any connection with the Adams Express Company. They always took freight from them."

Re-examination : " I wrote to Tunison asking for a receipt for my trunk, and he sent me this. It is a regular receipt copied from the way bill. I wrote to him about five months after I had ascertained that my trunk had been opened and things taken out."

On re-cross-examination, in reply to the following question : " When you delivered your trunk did you not understand that it was to be forwarded in the ordinary course of business of the company and upon their usual terms, except so far as payment was concerned ? " he answered, " I delivered it to them the same as I would any other piece of baggage, with no terms specified, the payment nothing said about."

This was all the evidence offered by the plaintiff. Upon the evidence introduced, or so much thereof as was competent, the defendants contended, " 1st, That the plaintiff could not maintain this action against these defendants ; 2d, That the bailment was gratuitous, and the plaintiff could not recover without evidence of gross negligence, and upon this question there was not sufficient evidence to warrant the jury in finding for the plaintiff ; 3d, That the limit of liability was fifty dollars."

The judge, by consent of parties, reported the case before verdict, for the determination of this court. If the plaintiff was entitled to maintain his action against the defendants, then the case to stand for assessment of damages only.

*C. Sewall*, for the plaintiff.

*S. B. Ives, Jr.*, for the defendants.

COLT, J. 1. There is evidence in the case to go to the jury, which would warrant a finding that the defendants, with others

not named, were partners, doing business at the time of the alleged bailment, as common carriers between Boston, New York and Savannah, under the name of the Adams Express Company, a joint stock association formed under the laws of New York. The statutes of that state, it is true, provide, in relation to actions against such companies, that suits shall be prosecuted, in the first instance, against the officers of the association only. N. Y. Sts. 1849, *c.* 258, §§ 4, 5 ; 1853, *c.* 153. But the common law liability of the individual members or stockholders, as partners, after a judgment had against the company, which remains unsatisfied, is not removed ; the statutes themselves expressly declaring that nothing therein contained shall be construed as conferring the rights or privileges of corporations, except as specified. By a familiar rule, the laws of another state, which have reference solely to the mode of pursuing a remedy, are not binding here, and the personal liability of the individual partners may be enforced according to the laws of this Commonwealth. *Allen* v. *Sewall,* 2 Wend. 327. *Bailey* v. *Bancker,* 3 Hill (N. Y.) 188. *Taft* v. *Ward,* 106 Mass. 518. No objection by way of plea in abatement is raised in the answer, on account of the non-joinder of the other members of the company.

2. There was evidence that the defendants failed to deliver a portion of the plaintiff's property in Boston according to their contract of bailment. The declarations, having a tendency to prove this, of the defendants' general agents in Boston and New York, and of their freight clerk, to whom the agent in New York had referred the plaintiff for information upon the subject, were made in the course of their duty, and come within that class held admissible in *Morse* v. *Connecticut River Railroad Co.* 6 Gray, 450.

3. Upon the question of the degree of negligence with which the defendants are chargeable, depending on whether the bailment was gratuitous or not, we think there was evidence tending to show a consideration for the defendants' undertaking, arising out of the plaintiff's contract of employment, the usages of the business, and the circumstances connected with the delivery of the property in question, proper to be submitted to the jury.

4. For the reasons above given, the plaintiff is entitled to maintain his action; and as judgment according to the terms of the report must be rendered in his favor, it is not necessary to consider whether, assuming the bailment to have been gratuitous, there was evidence of negligence such as would have charged the defendants in that relation.

The only question left is whether the damages to be assessed are limited to the fifty dollars named in the shipping receipt, or are to the full value of the property lost.

The receipt produced by the plaintiff was not taken by him at the time of the delivery of the baggage in question, but was sent from Savannah upon application made some months afterwards, and after the loss of the goods was ascertained. It contained a stipulation stated to be in part consideration of the contract, and declaring in substance that in no event should the holder of the receipt, in case of loss, demand beyond the sum of fifty dollars, at which the article forwarded was to be considered as valued, unless the value was otherwise expressed, or it was specially insured by the company. If this paper had been delivered to the plaintiff, as the contract of the defendants, at the time the goods were delivered, the acceptance of it without notice of dissent would have been evidence of an express contract, which it might be contended was sufficient to limit his claim to the sum named. As it is, the terms of the original contract of bailment are not affected by the receipt. Nor does the knowledge of this regulation which the plaintiff had previously acquired in the defendants' employment subject him to the limitation named. It is settled that mere notices, brought home to the owner of the goods, by which the carrier seeks to avoid or limit his common law liability, but which are not expressly assented to, cannot be availed of to defeat a claim for loss. A common carrier cannot so escape those liabilities which the policy of the law imposes, and without express assent or agreement waiving his rights, the employer may insist on the performance of the duty required. There must be some ground shown for the inference, that the owner intended, without any consideration, to give up the right to have his property transported at the risk of the carrier; and as no such ground is shown

here, damages for the plaintiff's loss must be assessed at the full value of the goods. *Grace* v. *Adams*, 100 Mass. 505. *Judson* v. *Western Railroad Co.* 6 Allen, 486.

*Judgment for the plaintiff; case to stand for the assessment of damages.*