Thomas W. Pearsall, Respondent, *v*. The Western Union Telegraph Company, Appellant.

When a telegraph company receives without conditions, a message for transmission, among the other obligations implied is the duty on its part to exercise due diligence to accurately transmit and promptly deliver the message; it does not insure accurate transmission and prompt delivery, but undertakes to exercise due diligence in these respects.

In an action against a telegraph company for damages for failing to accurately or promptly deliver a message, the plaintiff makes out a *prima facie* case of negligence by proving the delivery to it of the message, and that it was inaccurately or not promptly delivered.

A telegraph company incorporated under the General Telegraph Act (Chap. 265, Laws of 1848, as amended) of this state may, by contract, limit its liability for mistakes or delays in the transmission or delivery or for non-delivery of messages, caused by the negligence of its servants if the negligence be not gross, to the amount received for sending the dispatch; but such a company cannot, by notice, limit its liability in this respect, unless it is brought to the personal knowledge of the sender of the message and he assents to it. (Bradley and Brown, JJ., dissenting).

*Breese* v. *U. S. Tel. Co.* (45 Barb. 274; 48 N. Y. 132), limited.

*MacAndrew* v. *E. Tel. Co.* (17 Com. B. 3), questioned.

*Clement* v. *W. U. Tel. Co.* (137 Mass. 463), distinguished.

A shareholder in a corporation is not chargeable with constructive notice of resolutions adopted by the board of directors, or of provisions in the by-laws regulating the mode in which its business shall be transacted with its customers, and when dealing with the corporation as a customer his rights are not limited by its regulations or by-laws not brought to his knowledge.

Plaintiff, who was a member of a firm of stockbrokers doing business in the city of New York, while absent from the city, delivered a telegram

to defendant, directed to his firm, written upon a sheet of blank paper, directing the purchase of certain shares of stock. Through the mistake of the operator, the message as sent, was directed to plaintiff individually, and in consequence it remained unopened until his return the next day after its receipt, when the purchase was made; the stock, however, had meanwhile risen in the market. *Held*, that defendant was chargeable with negligence; and that plaintiff was entitled to recover as damages, the difference between the market value of the stock at the time of the receipt of the message and the sum paid for it.

Defendant proved that it had, for a long time previous to the sending of the message, used a blank form upon which messages were usually written. The blank contained printed matter in the form of an agreement between the sender of the message and the company to the effect that the company should not be liable for mistakes or delays in the transmission or delivery or for non-delivery of messages beyond a certain amount specified. Plaintiff testified in substance that he had been familiar for a long time with the general appearance of the blanks, had frequently sent messages written thereon, and had them lying on his office table ready for use, but that he never in fact, before sending the message in question, read any of the printed matter or had any knowledge of the terms thereof. The court ruled that the terms were not binding on the plaintiff. *Held* (BRADLEY and BROWN, JJ., dissenting), no error.

Reported below, 44 Hun, 532.

(Argued October 24, 1890; decided January 22, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 13, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages alleged to have been caused by defendant's failure to transmit correctly a telegraphic message.

In July, 1884, the plaintiff was a member of the firm of T. W. Pearsall & Co., bankers and brokers, engaged in business at the Mills Building, No. 17 Broad street in the city of New York. At about 8 o'clock in the forenoon of July 31, 1884, the plaintiff wrote on a sheet of blank paper and delivered to the telegraph operator, at the station of the Long Island railroad at Great Neck, the following telegram:

"GREAT NECK, L. I., *July* 31st.
"T. W. PEARSALL & Co., Mills Building, New York city:
  "Buy one thousand Western Union Telegraph.
                              "T. W. PEARSALL."

The message was not prepaid, but it was delivered at the office of T. W. Pearsall & Co. before 10 o'clock in the forenoon of the same day where the charge of twenty-five cents for its transmission was paid. The operator who received the message at and transmitted it from Great Neck, addressed it to "T. W. Pearsall, Mills Building, New York city," and it was so received by the receiving operator in New York, so written out on defendant's blank form No. 1, sealed in an envelope and addressed "T. W. Pearsall, Mills Building, New York city." The following is a copy of the message as transmitted from Great Neck and as delivered:

"Form No. 1.   The Western Union Telegraph Company.

"This company transmits and delivers messages only on conditions limiting its liability, which have been assented to by the sender of the following message.   Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not hold itself liable for errors or delays in transmission or delivery of unrepeated messages beyond the amount of tolls paid thereon, nor in any case where the claim is not presented in writing within sixty days after sending the message.   This is an unrepeated message, and is delivered by request of the sender under the conditions named above.

"THOMAS T. ECKERT, *Manager.*
                    "NORVIN GREEN, *President.*"

| "6 | 8.47 | | 8.34 | |
|---|---|---|---|---|
| Number 1 | Sent by Jm | Rec'd by Fg | 7 Collect | Check Delivered from 16 Broad Street. |

"Received at the Western Union Building, 195 Broadway, New York, July 31, 1884.

"Dated Great Neck Depot, L. I., 31.
"To T. W. Pearsall,
    "Mills Building, N. Y.:
"Buy one thousand Western Union Telegraph.
        "T. W. PEARSALL."

No person connected with the office of T. W. Pearsall & Co. had authority to open telegrams addressed to the plaintiff individually, and this one remained unopened until about 10 o'clock, A. M., of August first, when the plaintiff reached his office, opened and read the message. The result was that the shares ordered were not purchased July thirty-first, and on the morning of August first they had risen in the market so that they sold for $1,700 more than they did on the morning of the day before, and the plaintiff then actually purchased that number of shares and paid the market rate.

This action was brought to recover the sum of $1,700. The defendant by its amended answer admits that the message was delivered at its office at Great Neck, L. I., to a son of its agent, and by the letter of its general manager, admits that the error in its transmission was that of the operator at Great Neck, but it alleges that at this time, and for a long time previously, the defendant was using a blank upon which messages were usually written which contained the following printed matter:

"Form No. 2. The Western Union Telegraph Company.
"All messages taken by this company are subject to the following terms:
"To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed, between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for

mistakes or delays in the transmission or delivery, or for non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.

"Correctness in the transmission of messages to any point on the lines of this company can be insured by contract, in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz., one per cent for any distance not exceeding 1,000 miles, and two per cent for any greater distance. No employe of the company is authorized to vary the foregoing.

"No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender.

"Messages will be delivered free within the established free delivery limits of the terminal office — for delivery at a greater distance, a special charge will be made to cover the cost of such delivery.

"The company will not be liable for damages in any case where the claim is not presented, in writing, within sixty days after sending the message.

"THOS. T. ECKERT, *General Manager.*
                    "NORVIN GREEN, *President.*"

It is also alleged in the answer that plaintiff had notice of those terms and conditions.

Upon the trial, the plaintiff testified: "I am familiar with the general appearance of the blanks, with the printed heading, which the Western Union Telegraph Company furnishes to persons whose business it desires, and have been so for a

good many years. I have frequently sent messages written on such blanks. Bundles of such papers are lying on the table in my office, ready of access to anyone who desires to send a message by telegraph. There is quite a parcel of them there always in full view. I have been in the habit of taking blanks from that pile and writing messages on them and sending them myself, and I had been previous to the time this message was written on the 31st of July, 1884. * * * Q. Did you ever, in point of fact, before sending this message, read any of this printed matter that is at the head of the blanks in your office? A. No, sir. Q. Had you, in any way, knowledge of the terms of those conditions? A. No, sir." On the trial, the defendant offered in evidence blank form No. 2, and insisted that the plaintiff was bound by its terms, but the court rejected the offer and ruled that the terms were not binding on the plaintiff. But two questions were submitted to the jury: (1) Whether the defendant was negligent in transmitting the message. (2) The amount of damages. The jury returned a verdict for $1,757.86, upon which a judgment was rendered which was affirmed by the General Term, from which the defendant appeals to this court.

*Burton N. Harrison* for appellant. It is not necessary that there should have been a special and express contract in writing, in this particular case, signed by the plaintiff, agreeing that the company should not be held in damages for such a mistake as occurred in· the message, in excess of the tolls he had paid, unless he should order and pay for repetition of his message; all that was necessary for the protection of the company was that the company's regulation on the subject should have been brought to plaintiff's notice before this message was sent. (Laws of 1848, chap. 265, § 4; *Schwartz* v. *A. & P. T. Co.*, 18 Hun, 158; *Breese* v. *U. S. T. Co.*, 48 N. Y. 141; *Baldwin* v. *U. S. T. Co.*, 45 id. 751; *Kiley* v. *W. U. T. Co.*, 109 id. 236; *Becker* v. *T. Co.*, 11 Neb. 91; *Ellis* v. *A. T. Co.*, 13 Allen, 226–228.) It is quite immaterial, upon the evidence in this case, that the particular telegraph message, in the

case now at bar, was written by the plaintiff upon a piece of ordinary note paper, and not upon one of the company's special blanks with the rules and regulations on this subject printed at the head of the blank. The plaintiff must be held to have known the regulations in question, and to be bound by them. (*U. S. T. Co.* v. *Gildersleeve*, 29 Md. 247; *W. U. T. Co.* v. *Buchahan*, 35 Ind. 334; *T. Co.* v. *Carew*, 15 Mich. 536; *Wolf* v. *W. U. T. Co.*, 62 Penn. St. 83; *Redpath* v. *T. Co.*, 112 Mass. 73; *Grace* v. *Adams*, 100 id. 507; *Rice* v. *Dwight*, 2 Cush. 87; *Womack* v. *W. U. T. Co.*, 58 Tex. 180; *Belger* v. *Dinsmore*, 51 N. Y. 170; *Hill* v. *City of Syracuse*, 73 id. 352.) The plaintiff was a member and shareholder of the company at the time when the message in question was written and sent; he was for that reason, independent of every other, chargeable with knowledge of and was bound by the resolutions, rules and regulations of the company requiring all messages to be written on the ordinary telegraph blanks, and limiting the company's liability to a return of the tolls paid for possible mistakes in unrepeated messages. (Lindley on Part. 206, 207, 208, 209; *O.*, etc., *R. R. Co.* v. *Frost*, 21 Barb. 541; *U. H. Co.* v. *Mersee*, 79 N. Y. 454; Angell & Ames on Corp. § 359; Greenl. on Ev. §§ 484, 493; Abb. Tr. Ev. 48; *Allen* v. *Coit*, 6 Hill, 318; *Coles* v. *I.*, etc., *Ins. Co.*, 18 Ia. 431; *Billings* v. *Trask*, 30 Hun, 318; *Blake* v. *Griswold*, 103 N. Y. 434; *T. Co.* v. *McKean*, 10 Johns. 156; Laws of 1848, chap. 265, § 11; *Clement* v. *W. U. T. Co.*, 137 Mass. 463.) The court erred in denying defendant's motion for a nominal verdict, as the omission of "& Co." from the address is not in itself *prima facie* evidence of negligence on the part of the company. (*Ellis* v. *A. T. Co.*, 13 Allen, 226, 228; *Curtis* v. *R.*, etc., *R. R. Co.*, 18 N. Y. 535; *Holbrook* v. *U.*, etc., *R. R. Co.*, 12 id. 236; *Womack* v. *W. U. T. Co.*, 58 Tex. 181.) The contention of counsel for plaintiff that defendants are to be charged with negligence here, because the person to whom plaintiff's friend handed the message at Great Neck depot, and who assumed to telegraph it thence, was a "mere boy without any sufficient education in telegraph business,

with no one to look after him, and with no experience or quali-
fications fitting him for the place," was erroneous.   (*Althorf* v.
*Wolfe*, 22 N. Y. 365 ; *Milligan* v. *Wedge*, 12 Ad. & El. 737 ;
Addison on Torts, 105 ; *Mitchell* v. *L. M. Ins. Co.*, 51 Penn.
St. 411.)   There was nothing in the message itself to inform
the defendant of the importance of the order it gave, or indeed
of its meaning.  (*Kiley* v. *W. U. T. Co.*, 39 Hun, 164 ; *Wil-
liams* v. *Reynolds*, 34 L. J. [Q. B.] 221.)   The damages
claimed in this case were and are uncertain, speculative —
contingent upon a thousand possibilities no man can estimate
with any certainty or confidence ; and such alleged damages
are never allowed by the courts of this state to be recovered
in a case like this.   The jury cannot be asked to guess ; they
are to try the case on evidence, not upon mere speculative
conjecture.  (*Griffen* v. *Colver*, 16 N. Y. 490 ; *Kiley* v. *W.
U. T. Co.*, 39 Hun, 161, 164 ; 33 Wis. 558 ; *Baker* v. *Drake*,
53 N. Y. 216 ; 101 id. 205.)   The court below erred in answer-
ing in the negative the inquiry of the jury : " Can the jury
consider the question of the want of diligence on the part of
the plaintiff in not having required the message he sent to be
repeated or insured."   (*Whelan* v. *Lynch*, 60 N. Y. 472.)

*Thomas G. Shearman* for respondent.   Telegraph com-
panies are common carriers.  (*T. Co.* v. *Texas*, 105 U. S.
460; *Abraham* v. *W. U. T. Co.*, 23 Fed. Rep. 315 ; *Bald-
win* v. *U. S. T. Co.*, 1 Lans. 125 ; Laws of 1855, chap.
559 ; 2 R. S. [7th ed.] 1721.)   They cannot refuse messages.
(*Smith* v. *W. U. T. Co.*, 83 Ky. 104; *Marr* v. *W. U. T. Co.*,
85 Tenn. 529.)   Their liability cannot be limited by notice.
(*Kirkland* v. *Dinsmore*, 62 N. Y. 175 ; *Dorr* v. *N. J. S. N.
Co.*, 11 id. 485 ; *Browning* v. *L. I. R. Co.*, 2 Daly, 117 ;
*Hollister* v. *Nowlen*, 19 Wend. 234 ; *Cole* v. *Goodwin*, Id.
251 ; *Powell* v. *Myers*, 26 id. 591 ; *Nevins* v. *B. S., etc., Co.*,
4 Bosw. 225 ; *C., etc., R. Co.* v. *Belknap*, 21 Wend. 354 ;
*E. Co.* v. *Caldwell*, 21 Wall. 264; *McMillan* v. *M., etc.,
R. Co.*, 16 Mich. 79 ; *Baldwin* v. *U. S. T. Co.*, 1 Lans.
125, 136 ; *DeRutte* v. *A., etc., T. Co.*, 1 Daly, 547 ; *Abra-*

*ham* v. *W. U. T. Co.*, 23 Fed. Rep. 315.) Evidence of custom is inadmissible. (*Coxe* v. *Hisley*, 19 Penn. St. 243; *Browning* v. *L. I. R. Co.*, 2 Daly, 117; *Clyde* v. *Graver*, 54 Penn. St. 251.) A stipulation relieving a carrier from liability must be explicit. (*Alexander* v. *Green*, 7 Hill, 533, 558; *Mynard* v. *S., etc., R. Co.*, 71 N. Y. 181; *Magnin* v. *Dinsmore*, 56 id. 168.; *Blair* v. *E. R. Co.*, 66 id. 313; *Steinway* v. *E. R. Co.*, 43 id. 123.) The refusal of the court to admit in evidence the printed headings to certain telegraph blanks was right. (*Clyde* v. *Graver*, 54 Penn. St. 251; *McMillan* v. *M., etc., R. Co.*, 16 Mich. 79; *E. Co.* v. *Caldwell*, 21 Wall. 264; *Kirkland* v. *Dinsmore*, 62 N. Y. 175; *Blossom* v. *Dodd*, 43 id. 264.) The rules and regulations which the defendant offered in evidence were properly excluded as not binding upon the plaintiff, and the exception taken to that decision is unfounded. (*Mynard* v. *S. R. Co.*, 71 N. Y. 180; *Magnin* v. *Dinsmore*, 56 id. 168; *Steinway* v. *E. R. Co.*, 43 id. 123; *Haines* v. *Brown*, 36 N. H. 544; *Marriage* v. *Lawrence*, 3 B. & A. 144; *People* v. *L. S. R. Co.*, 11 Hun, 1; *People* v. *Walker*, 9 Mich. 328; *Rex* v. *M. T. Co.*, 2 B. & A. 115; *Dunham* v. *Trustees, etc.*, 5 Cow. 465.) The defense that the firm of T. W. Pearsall & Co. was a stockholder in the defendant company, and was, therefore, subject to all by-laws which should be adopted by it, is untenable. (*Rice* v. *P. Club*, 52 Mich. 87; *Bergman* v. *S. P. B. Assn.*, 29 Minn. 275; Taylor on Part. § 561.) An error in a message is proof of negligence. (*Baldwin* v. *U. S. T. Co.*, 45 N. Y. 744, 751; *Ayer* v. *W. U. T. Co.*, 79 Me. 493; *Bartlett* v. *W. U. T. Co.*, 62 id. 221; *Rittenhouse* v. *I. L. T. Co.*, 44 N. Y. 265.) The court correctly refused to charge that there was nothing in the evidence to justify the finding by the jury that there had been gross negligence or willful misconduct on the part of the defendant. (*W. U. T. Co.* v. *Buchanan*, 35 Ind. 429.) The rule of damages was correct. (*Dana* v. *Fiedler*, 12 N. Y. 40; *Walrath* v. *Redfield*, 18 id. 467; *Dox* v. *Day*, 3 Wend. 356; *Decker* v. *Matthews*, 12 N. Y. 313; *Caldwell* v. *Murphy*, 11 id. 416; *Jones* v. *Osgood*, 6 id. 233; *Sanford* v. *Crocheron*, 8 Civ. Pro.

Rep. 146; *Rittenhouse* v. *Tel. Co.*, 44 N. Y. 263; *Leonard* v. *Tel. Co.*, 41 id. 544; *U. S. T. Co.* v. *Wenger*, 55 Penn. St. 262; *Squire* v. *Tel. Co.*, 98 Mass. 232; *True* v. *Tel. Co.*, 60 Me. 9; *W. U. T. Co.* v. *Hall*, 124 U. S. 444.) The damages were not speculative. (*W. U. T. Co.* v. *Hall*, 124 U. S. 444; *Hibbard* v. *W. U. T. Co.*, 33 Wis. 558; *Kiley* v. *W. U. T. Co.*, 39 Hun. 158.)

Follett, Ch. J. This action was tried and a recovery had at Circuit, which was sustained at the General Term on the theory that the contract between the parties was the one implied by law when a telegraph company receives, without conditions, a message for transmission. Among other obligations implied in such a case, is the duty to accurately transmit and deliver to the addressee the message received, which in this case defendant failed to do, as it admits, by reason of the mistake of the operator who received and undertook to send forward the communication. Under such a contract a telegraph company does not insure the accurate transmission and delivery of a dispatch, but undertakes to exercise due diligence to do so.

The question has several times arisen whether, in actions for damages against such corporations for failing to accurately or promptly deliver communications, a plaintiff makes out a *prima facie* case by proving the contract and its breach, or whether the plaintiff must go further and give evidence of some negligent act of omission or commission on the part of the corporation or of its agents.

*Rittenhouse* v. *Independent Line of Tel.* (1 Daly, 474; 44 N. Y. 263), was brought to recover damages for failing to correctly transmit a message, and it was held that a *prima facie* case was made out by showing that the communication delivered was not a copy of the one sent.

In *Baldwin* v. *U. S. Tel. Co.* (45 N. Y. 744), a dispatch was received for "Erie Darling," but as transmitted it was addressed to "E. R. Cooley" and was not delivered to Dar-

ling for several days; and it was held that by proof of these facts a *prima facie* case was established.

In *Breese* v. *U. S. Tel. Co.* (48 N. Y. 132), it was proved that a message directing the purchase of $700 in gold was changed to one ordering $7,000 in gold, and it was said, though not necessary for the decision of the case, that it was not *prima facie* proof of neligence.

The rule laid down in the first two cases has been followed by the courts of other states and is approved by the text writers. (Whart. on Neg. § 756; Gray Tel. §§ 26, 53, 54, 77; Abb. Tr. Ev. chap. 32; 2 Green. Ev. § 222a, note; 2 Shear. & Red. Neg. § 542; 2 Thomp. Neg. 837; 3 Suth. Dam. 295.)

The court correctly instructed the jury that the evidence made out a *prima facie* case of negligence against the defendant.

In the cases holding that telegraph companies are only liable when grossly negligent, there were contracts exempting them from all liability, except to refund the tolls received for negligently sending or delivering the communication. Without considering whether there is any legal distinction to be drawn between gross and ordinary negligence in such cases, it is sufficient to say that these cases are not germane to the question in the case at bar.

At the time this message was received the plaintiff was one of defendant's shareholders, and it was offered to be proved, in defense of the action, that the board of directors had adopted a resolution that it would not be liable for mistakes or delays in the transmission or delivery of unrepeated messages, and would not be liable for damages arising from delays in the transmission or delivery of a repeated message beyond an amount specified; and it was insisted that he being a shareholder was chargeable with notice of this resolution. The regulations were excluded and the defendant excepted. In this there was no error, for a shareholder in a corporation is not chargeable with constructive notice of resolutions adopted by the board of directors, or by provisions in the by-laws regulating the mode in which its business shall be transacted with its customers, and the plaintiff's rights arising out of defendant's

contract to transmit the message were in no wise limited by its regulations or by-laws not brought to the plaintiff's knowledge. (*Hill* v. *Manchester & Salford Water Works Co.*, 5 B. & Adol. 866; *Rice* v. *Penninsular Club*, 52 Mich. 87; Mor. Corp. §§ 500, 500a.)

The court instructed the jury that the plaintiff was entitled to recover the difference between the market value of the stock on the morning of July thirty-first and the sum which he paid for it on the morning of the following day. It distinctly appeared on the face of the dispatch that it was an order to buy shares; and in such cases the liability of the corporation not being limited by a special contract, the measure of damages is the difference between the market value of the shares at the time when the dispatch should have been delivered and the sum paid for them in the market on the receipt of the message. (*Rittenhouse* v. *Tel. Co.*, 44 N. Y. 263; *Leonard* v. *Tel. Co.*, 41 id. 544; *Squire* v. *W. U. Tel. Co.*, 98 Mass. 232; *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444; *U. S. Tel. Co.* v. *Wenger*, 55 Pa. St. 262; 3 Suth. Dam. 307.)

It is insisted on behalf of the defendant that the court erred in excluding from the consideration of the jury the conditions printed on Form No. 2. It is settled that a telegraph company, incorporated under the general statutes of this state may, by contract, limit its liability for mistakes or delays in the transmission or delivery, or for the non-delivery of messages caused by the negligence of its servants, if the negligence be not gross, to the amount received for sending the dispatch. (*Breese* v. *U. S. Tel. Co.*, 48 N. Y. 132; *Kiley* v. *W. U. Tel. Co.*, 109 id. 236.) But it has never been decided by the court of last resort that such a company can, by notice, limit its liability for such mistakes or delays.

*Breese* v. *U. S. Tel. Co.* (45 Barb. 274; 48 N. Y. 132), arose out of the erroneous transmission of a message written on a blank containing printed conditions, and it was held that a party by writing his dispatch on the blank assented to the printed terms and conditions. In discussing the question it was said: " They (telegraph companies) can thus limit their liability for

mistake not occasioned by gross negligence or willful misconduct, and this they can do by notice brought home to the sender of the message, or by special contract entered into with him." We think this remark cannot be regarded as an adjudication that the common-law liability of a telegraph company may be limited by a mere notice, unless it is brought to the personal knowledge of the sender of the message, and he is shown to have assented to it. In this state a common carrier may, by an express contract with the shipper, exempt itself from liability for loss or damage occasioned by the negligence of its servants. (*Wells* v. *N. Y. C. R. R. Co.*, 24 N. Y. 181; *Bissel N. Y. C. R. R. Co.*, 25 id. 442; *Poucher* v. *N. Y. C. R. R. Co.*, 49 id. 263; *Cragin* v. *N. Y. C. R. R. Co.*, 51 id. 61; *Spinetti* v. *Atlas S. S. Co.*, 80 id. 71; *Mynard* v. *Syr., B. & N. Y. R. R. Co.*, 71 id. 180; Wheeler on Carriers, 76, 86.) But a common carrier cannot, by notice, limit its common-law liability to safely carry and deliver goods without evidence of the shipper's assent to the limitation proposed. (*Hollister* v. *Nowlen*, 19 Wend. 234; *Cole* v. *Goodwin*, Id. 251; *Clark* v. *Faxton*, 21 id. 153; *Camden, etc., Trans. Co.* v. *Belknap*, Id. 354; *Dorr* v. *N. J. Steam Nav. Co.*, 11 N. Y. 485; *Blossom* v. *Dodd*, 43 id. 264.)

Telegraph companies organized like the defendant under chapter 265 of the Laws of 1848, and the acts amendatory thereof and supplementary thereto, like companies incorporated for the carriage of goods and passengers, owe duties to the public. Such corporations, like railroads, may exercise the right of eminent domain, and they are required to exercise due diligence to transmit with celerity and skill all messages delivered to them, subject to such reasonable rules as may be adopted to protect their rights and facilitate the performance of their duties. They, like common carriers have become necessary instrumentalities for conducting the business of the country, and they owe the same duty to the public and, we think, should be held to the same rule in respect to their right to limit their liability by notice. In this state the doctrine

that the common-law liability could not be limited without an express contract has been applied to individuals. and firms acting as common carriers, as well as to corporations.

In *MacAndrew* v. *Electric Tel. Co.* (17 Com. B. 3), it was said that the common-law liability of a telegraph company may be limited by notice, but the report of the case does not show whether the message was written on a blank with or without conditions. But in England it was held that carriers could, by notice, limit their liability for the loss of goods, even in cases of gross negligence, which resulted in statutes providing that their liability could not be limited except by an express contract. (§ 6, chap. 68, 11 Geo. IV. and 1 Wm. IV; § 7, chap. 31, 17 & 18 Vic.)

In *Clement* v. *Western Union Tel. Co.* (137 Mass. 463), a message not written upon one of the defendant's blanks was sent to its office for transmission. It was forwarded in due time, but was not delivered by the office at which it was received. In an action brought for the recovery of damages occasioned by the failure to deliver, it appeared that the plaintiff's agent who sent the message knew the terms and conditions on which the defendant, by its rules, provided that messages should be sent over its line as set forth in the blank then in use by it, and it was held that this knowledge of the plaintiff's agent was binding upon him, and that no recovery could be had.

In the case last cited a different rule was applied to telegraph companies from the one applied by the same court to express companies. In *Gott* v. *Dinsmore* (111 Mass. 45) the plaintiff shipped goods by express, not taking at the time the usual receipt containing printed conditions limiting the liability of the company, with which the plaintiff was familiar, he having been in its employment and issued many such receipts. It was held that mere notice brought home to the owner of the goods, by which the carrier seeks to limit its common-law liability, and the terms of which are not expressly assented to, were insufficient to defeat a claim for loss. The court said: "Nor does the knowledge of the regulation which

the plaintiff had previously acquired while in defendant's employment subject him to limitations imposed by the receipt." In *Ellis* v. *American Tel. Co.* (13 Allen, 226) the reasons are clearly and satisfactorily stated for the existence of the rule that telegraph companies are not, unless they so expressly contract, held to warrant or insure the accurate transmission or prompt delivery of messages, and are only liable for negligence. But we find no satisfactory reason in this or in any case for a rule that such companies may, by notice, limit their liability for negligence, nor do we see any in the nature of the business in which they are engaged. Carriers and telegraph companies are alike engaged in *quasi* public employments, and persons are, from necessity, compelled to employ the latter without more opportunity for choice and deliberation than when they select the former. As before shown, the liability on contract of carriers of goods which is implied by law cannot be limited by notice, and it is difficult to see why telegraph companies should be permitted to limit a much less onerous obligation by a mere notice.

The judgment should be affirmed, with costs.

BRADLEY and BROWN, JJ. (dissenting). After the blank known as Form No. 2 was put in evidence the defendant's counsel was refused permission to read to the jury the rules and regulations printed upon said blank, and which stated the condition upon which all messages were taken by the company. In substance these regulations were to the effect that the company would not be liable for mistakes in the delivery of a message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same, unless the sender should order the message telegraphed back to the originating office for comparison, and for that service one-half the regular rate was to be charged in addition to the amount received for sending the message.

The defendant testified that he had no knowledge of the terms of the conditions upon the Form No. 2. But there was ample evidence in the case from which the jury could have

found that the plaintiff knew of these regulations, and that all messages received by the company were sent over its wires subject thereto.

If the jury had so found it would have also been permissible for them to find that the message in question was sent subject to such conditions, and that the defendant's liability was limited to the amount charged for sending the message.

A special and express contract is not necessary to limit the liability of the telegraph company for mistakes in the transmission of messages, and in this respect such corporations differ from common carriers. The reasons for this distinction are very clearly pointed out in *Ellis* v. *American Tel. Co.* (13 Allen, 226), and in the views there expressed we concur.

In that case the message was written upon one of the blanks of the corporation, upon which was printed the rules of the company limiting its liability.

In *Clement* v. *Western Union Telegraph Co.* (137 Mass. 463) the message was not written upon one of the defendant's blanks, but on its delivery to the defendant it was upon a plain piece of paper. The condition upon which defendant, by its rules, provided that messages should be sent over its line as set forth in the form of a blank in use by it were, however, known to the plaintiff's agent, such blanks having been frequently used by him, and it was accordingly held that a finding was warranted that the contract was entered into subject to the stipulations contained upon such blanks, and that the plaintiff could recover only the cost of the message.

We can see no conflict between this case and *Gott* v. *Dinsmore* (111 Mass. 45), cited in the prevailing opinion, the latter being an action against an express company for the loss of a trunk, and was disposed of by the application of rules of law applicable to common carriers.

In this state it has been decided that a telegraph company is not a common carrier, and is not subject to the peculiar liability of common carriers. (*Breese* v. *U. S. Telegraph Co.*, 48 N. Y. 132; *Schwartz* v. *A. & P. Telegraph Co.*, 18

Hun, 158; *Kiley* v. *Western Union Telegraph Co.*, 109 N. Y. 231.)

In the case last cited, in speaking of the regulations limiting the liability of the company unless the message was repeated, it was said "that a telegraph company has the right to exact such a stipulation from its customers is the settled law in this and most of the states of the union and in England.

"The authorities hold that telegraph companies are not under the obligation of common carriers. They have the right to make reasonable regulations for the transaction of their business and to protect themselves from liabilities which they would otherwise incur through the carelessness of their numerous agents and the mistakes and defaults incident to the transaction of their peculiar business.

"The stipulation printed in the blank in use in this case has frequently been under consideration in the courts and has always in this state and generally elsewhere been upheld as reasonable."

In that case the message was written upon one of the printed forms of the defendant and it was decided that the plaintiff would be held by the use of the blank and its delivery to the company, to have assented to the condition thereon although he might not have known their precise terms; and the Massachusetts case referred to and the *Breeze* case and *Schwartz* case were cited as authorities for such decision.

The authorities cited establish in our opinion the rule that a telegraph company may limit its liability for mistakes in the transmission of messages by reasonable regulations brought to the knowledge of its customers, and had the jury found, as they might have done upon the evidence in this case, that the plaintiff knew that such regulations had been established and that the defendant's liability was limited to the amount charged for sending the message unless it was ordered to be telegraphed back it would also have been permissible for them to find that he contracted with the defendant upon such condition. Whether the court would have been justified upon a finding of knowledge of these conditions upon plaintiff's part in hold-

ing as a matter of law that he must be deemed to have assented to the condition, it is unnecessary to here state, in view of the fact that the judgment is to be affirmed.

The views now expressed sufficiently indicate the difference existing between the majority and minority of the court.

It was material to a proper disposition of the case that the regulations printed upon the blank put in evidence should have been read to the jury and it was error for the court to exclude them and for such error the judgment should be reversed and a new trial granted.

All concur with Follett, Ch. J., except Bradley and Brown, JJ., dissenting and Haight J., not sitting.

Judgment affirmed.